Finney, Appellant, *v.* G. C. Murphy Company.

556

Argued January 10, 1962. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Arthur Berman,* for appellant.

*John A. MacPhail,* with him *Brown, Swope & Mac-
Phail,* for appellee.

Opinion by Mr. Justice Musmanno, March 20, 1962:

On June 24, 1954, the plaintiff, Mrs. Elizabeth M. Finney, accompanied by two other ladies, entered the store of the defendant, G. C. Murphy Company in Gettysburg, slipped on the floor and sustained serious injuries. She brought an action of trespass against the store owner. At the ensuing trial a verdict was returned for the defendant, but the trial court ordered a new trial because of the admission of improper testimony. The defendant appealed to this Court and we affirmed the order (400 Pa. 46).

At the second trial the court entered a compulsory nonsuit and the case is now again before us, this time on the appeal of the plaintiff whose motion to take off the nonsuit was refused in the court below. It is, of course, hornbook law that the owner of premises upon which persons come by invitation is required to maintain the premises in a reasonably safe condition for the contemplated uses thereof and the purposes for which the invitation is extended. *Vetter v. Great A. & P. Tea Co.*, 322 Pa. 449.

Did the G. C. Murphy Company maintain their premises in a reasonably safe condition? The plaintiff testified that as she was walking in the store for the purpose of making a purchase she suddenly slipped and measured her length on the floor. When she was lifted to a chair she saw that the cause of her mishap was a quantity of oil beneath her feet. She said that her left heel skidded through the oil and that her stockings and slip had become wet because of coming in contact with it.

Mrs. Mary Sunday, who was with the plaintiff when she fell, testified that the floor looked as if it had been freshly oiled. Mrs. Jean Sunday was not with Mrs. Finney at the moment she fell, but she joined her immediately after the accident and said that the floor at

that point was covered with a pool or puddle of oil which measured two feet long and one foot wide. She said: "Well, it looked from where I was standing, it looked like oil and it looked like they just put a lot on the floor and didn't straighten it out." She also described the quantity of oil as "it was there on a pile."

It is clear from this testimony, and other testimony of a similar character, that the floor in Murphy's store presented a condition from which a jury could infer negligent maintenance.

The defendant company admitted that approximately once a week it applied to the floor a compound known as Myco Sheen, and it was established by chemical analysis that this product is made up of 90% petroleum oil. The principal attribute of oil is slipperiness. One of its main uses is that of lubrication so that the device or mechanism in which it operates may move with the least degree of friction. If it appears on any surface over which the human foot treads, it still operates to prevent friction and thus the foot finds no traction and consequently slides, slips or skids. Accordingly a pool of oil on any walking surface is potentially a human toppler as much as the proverbial tossed-away banana skin.

The defendant argues that there was no evidence to establish that the substance on the floor was Myco Sheen. Since the evidence was uncontradicted that Myco Sheen is made up mostly of oil and that Myco Sheen is the only substance the defendant applied to the floor, a question of fact arose as to whether the composition which caused the plaintiff to fall was not the Myco Sheen applied by the defendant. The trial court conceded that the composition on the floor was oil but was concerned about the manner in which it got there. It said: "There is nothing in the present case to show how the oil got on the floor, where it came from, or how long it had been there."

In explaining why it entered a nonsuit the trial court said that "for anything that appears in the record the oil might have been dropped by someone not connected at all with the store." It, of course, *is* possible that a stranger entered the store with a bucket of oil, applied it to the floor and then at a certain point applied it to the entire floor with such copiousness that it formed a pool covering an area of two square feet. This is possible just as it is also within the realm of fanciful conjecture that the oil came up from an oil gusher beneath the floor. However, factual issues in court are decided on probability and not on stark, remote peradventure.

From what the trial court has said and from what the defendant argues on appeal, a theory is advanced that there had to be direct evidence that the defendant applied the Myco Sheen. This theory does not accord with established law, applicable logic and the record of human experience. If direct evidence were absolutely required in trespass cases of the character here in litigation, very few persons who have been injured because of actual negligence on the part of land proprietors could ever prove negligence. Direct evidence would mean that the eventual victim would have to anticipate his hard luck and have persons spying at the place of his preordained culminating misfortune, making notes of all acts of heedlessness on the part of his future tortfeasor and his agents. Of course, if he could anticipate all this there naturally would be no accident because obviously he would stay away from the preannounced catastrophe.

Cases must be taken as they are, and where logic, reason, fair dealing, inevitable inference and just conclusions, based on reliable circumstances, establish liability the final decision reached is just as trustworthy as one founded on the testimony of eyewitnesses of the neglectful act. The plaintiff in a trespass action is not

required to prove, like flashbacks in a motion picture, the precise manner in which the tortious condition developed. Nor is he required to prove with mathematical exactness and caliper precision that the accident could only happen in one manner to the exclusion of all other possibilities in the world of chance and unforeseeable concatenation of circumstance. In the case of *Smith v. Bell Telephone Co.*, 397 Pa. 134, 138, this Court, speaking through Justice McBRIDE, said: "It is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to liability; it is enough that there be sufficient facts for the jury to say reasonably that the preponderance favors liability. The judge cannot say as a matter of law which are facts and which are not unless they are admitted or the evidence is inherently incredible. Also, it is beyond the power of the court to say whether two or more reasonable inferences are 'equal' . . . The facts are for the jury in any case whether based upon direct or circumstantial evidence where a reasonable conclusion can be arrived at which would place liability on the defendant."

The plaintiff testified that the color of the floor was generally uniform so that no one could detect at a glance where the oil had been applied normally and where it had accumulated to present perilous slipperiness. It was only after Mrs. Finney had skidded through the pool of oil that she saw that it was deeper here than elsewhere. The trial court deduced from this uniformity of color a lack of evidence that the oil had been recently applied. It said: "The plaintiff seeks to infer that the compound had been recently applied from the testimony of Mrs. Jean Sunday, one of the companions of Mrs. Finney, to the effect that the floor of the store 'was well scrubbed and it was nice and clean'; it looked like 'it was scrubbed and oiled', and that of Mrs. Finney to the effect that the floor looked

'just clean, like they do whenever they have the opening of stores'; 'clean, freshly clean.' Also the testimony of Mrs. Mary Sunday, the other companion, that the floor looked 'very clean and freshly oiled', but not slippery. 'It looked like a new floor or an old floor that had been freshly oiled'."

After this series of statements which irresistibly convey the idea of recent work on the floor, the court says: "This testimony, of course, does not indicate that the floor had actually been recently oiled." But, in the absence of pre-accident informers, how else could the plaintiff produce her case? She, and the persons accompanying her, testified to what they saw. If language has any meaning, the expressions that the floor was *freshly* clean," and that it looked "freshly oiled" certainly produces enough of a clear and unambiguous picture to help the jury in determining whether the oil was applied recently or a long time previously. And then it doesn't really matter when the oil was applied, provided it produced a dangerous condition. In fact, the longer the dangerous condition existed, the greater would be the negligence of the store owner. Where one creates a dangerous condition by his own antecedent active conduct, it is unnecessary to prove that he had notice of such condition. (*Hayden v. Philadelphia*, 381 Pa. 134).

We are satisfied from the record that the evidence in the case presented issues of fact which were strictly for the jury to determine. The judgment of the court below is, therefore, reversed with a venire facias de novo.

Mr. Justice BENJAMIN R. JONES and Mr. Justice COHEN dissent.