481 A.2d 1194

**Jeanne E. LITTLE, Appellee**

v.

**YORK COUNTY EARNED INCOME TAX BUREAU, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 1, 1983.

Filed Aug. 17, 1984.

Petition for Allowance of Appeal Granted Feb. 12, 1985.

Steven M. Carr, York, for appellant.

Daniel W. Shoemaker, York, for appellee.

Before WICKERSHAM, WIEAND and CERCONE, JJ.

CERCONE, Judge:

At the time of trial in this case, appellee Jeanne E. Little was forty-three years old and an employee of the phone company in York County. Her employer withheld her wage tax every year and there is no dispute that Little was in no way delinquent in the payment of her local wage tax. Contrary to her previous practice of engaging H & R Block to prepare her tax returns, Little accepted the offer of her friend to do her taxes with her for the 1978 tax year. Little had moved in the middle of 1978 from Spring Grove to Red Lion School District. She had not received a form in the mail for the filing of her local taxes, so, finding the telephone number of appellant York County Earned Income Tax Bureau in the phone book under tax information, she called the Bureau. (The Bureau was described at trial as a non-governmental, profit-making tax collection service for certain municipalities and school districts.) An employee of the bureau spoke with her on the phone and told her that she would send Little the necessary form. She informed Little that she should fill out one form and that her move from one district to the other should be entered on the back

of the form. Little was erroneously told to return the completed form to the Bureau. What she actually should have done was to send a return also to Spring Grove School District. Little sent the return to the Bureau, but, unknown to Little, Spring Grove district was not serviced by the Bureau and that district never received a copy of her return. So, to Spring Grove, Little appeared to be in default of the local tax laws which required her to file a tax return, even though the proper amount of tax monies had been withheld by her employer.

Then, in early April of 1980, Little was at home with her son and some friends when she was arrested for failure to pay her taxes. She was made to go to Magistrate Sam Hill's office. When she was asked how she pleaded, she said she entered no plea, although she had explained to the constable at her home that all her taxes had been withheld and returns filed. The Magistrate set her bond at $500.00 cash bail and required that it be paid that night *in cash.* As neither Little or her friends had that much cash on them, Little was committed to the County Jail. Her brother retained a lawyer for her and the lawyer visited her at the jail the next evening. That was the day before Good Friday, which was a court holiday, and the lawyer informed Little that he could not get her released until Monday. Little was released on Monday evening, after having spent five days in jail. She described her experience as outrageous, uncalled for, and something that was "more likely to happen in Russia." She testified to being denied her allergy medication, to being made to share space with women who had been charged with felonies, to inadequate food, clothing and sleeping quarters, to mistreatment by jail matrons, and to other indignities. The charges were eventually dismissed against her.

Little brought suit against the York County Earned Income Tax Bureau in both contract and tort. The court sustained the demurrer as to the contract cause of action, but submitted the case to the jury on a theory of negligent representation on the part of the Bureau. It instructed the

jury that they were to decide whether the Bureau caused the incarceration of Little, or whether Little herself acted unreasonably in the course of events.[1] Under the *Restatement of Torts*, 2d, § 905, the court instructed the jury that they could award Little damages for humiliation. The jury returned a verdict in favor of Little in the amount of $20,361.05. Twenty thousand ($20,000.00) represented damages for her humiliation, and $361.05 included attorney's fees and court costs. After denial of motions for judgment N.O.V. and/or a new trial, judgment was entered.

On appeal, the Bureau argues that the lower court erred in refusing its post-verdict motions because Little failed to prove that her experience in the York County Jail was proximately caused by the Bureau; that Little was not entitled to damages for her mental distress; and that the verdict was excessive. We affirm.

Appellant compares the chain of causation in this case to a Rube Goldberg contraption. It cites the *Restatement of Torts*, 2d, § 435(2) that essentially states that when it appears to the court highly extraordinary that the harm should have been caused by the actor's conduct, that, it is then not the legal cause of the harm. Appellant asserts that the trial judge ignored the

> "separate, independent and unforeseeable events that plaintiff would fail to receive the first class mail notice from Spring Grove that she had not filed the requisite return, that she would not pick up the certified letter at the Post Office containing the same important notice, and that no one in her family had time to pick it up either. These events can hardly be said to have been set in motion as natural or probable consequences of appellant's negligence, nor can the highly extraordinary event that

1. Little testified at trial that she received notices that certified or registered mail was to be picked up at the post office, but that she never picked it up. She stated that she had no way of knowing from whom they originated. It was established that these were notices from the Spring Grove School District regarding her failure to file her return. An official from Spring Grove also testified that it was his practice to precede the certified notices with a first class mail notice. Little stated that she never received that notice.

she was not able to post bail on the evening of April 2, 1980, when she was arrested. It is totally unforeseeable that a woman of mature age, good reputation, steady employment, and solid property, arrested on such a trivial charge, would not be released on her own recognizance or unable to post in short order such a modest bail, or unable to at least obtain a bail bond."

Appellant also argues that the advice of Little's attorney that he could not get her out of prison until after the weekend must be regarded as a superseding cause of her injury, relieving the Bureau of any liability.

■ We are guided in our review by certain well-established principles of tort law. Initially, a distinction is traditionally drawn between foreseeability as appellant has argued it and proximate cause. Foreseeability is not an element to be considered in determining whether negligent conduct was the proximate cause of an accident, but it is an element of determining whether an actor's conduct was negligent. *Fredericks v. Castora*, 241 Pa. Superior Ct. 211, 360 A.2d 696 (1976). In *Lerro v. Thomas Wynne, Inc.*, 451 Pa. 37, 301 A.2d 705 (1973), an oil company was found to be liable to plaintiffs who bordered a stream into which oil had seeped because of the Company's failure to inspect its underground oil tanks. Our Supreme Court found that reasonable care would have included such inspections, and, thus, the remote harm to plaintiffs was caused by the negligent conduct of the defendant. It found that the harmful consequences could reasonably have been foreseen and thus prevented by reasonable care.

Appellant relies on *Restatement of Torts*, 2d, 435(2), Foreseeability of Harm or Manner of Its Occurrence; § 2 states that an actor's conduct *may* be held not to be a legal cause of harm ... [when] it appears to the court highly extraordinary that it should have brought about the harm. However, § 1 of that same Section 435 states that "if the actor's conduct is a substantial factor in bringing about harm to another, the fact that the actor neither foresaw nor should have foreseen the extent of the harm or the manner

in which it occurred does not prevent him from being liable."

"[T]he court, knowing that such a force has intervened may see nothing extraordinary either in its intervention or in the effect which it has upon the future development of the injurious results of the defendant's conduct. This is particularly important where the intervening force is supplied by the act of a human being or animal, which is itself a reaction to the stimulus of a situation for which the actor is responsible."

In the instant case, the Bureau's former director testified that its volume of "taxables" and employers precluded any notice to Little that she filed with Spring Grove for the months that she lived there. He admitted that the name, "York County Earned Income Tax Bureau" did cause some confusion, in that taxpayers erroneously considered it was an arm of the local government. Thus, a filing with the Bureau could reasonably be assumed by a taxpayer to satisfy his duty to file his tax returns, regardless of what district he resided in. It was also established at trial that it was general knowledge that failure to file a tax return could result in fines and imprisonment. Reasonable care in this case would have made appellant cognizant of the public trust it engendered by its very name; that those employees dealing with the public be extremely accurate in the advice given to taxpayers; and that some effort be made by appellant to see that a copy of a return erroneously filed with them be forwarded to the non-serviced school district. Thus, for want of appellant's reasonable care in this case, a series of unfortunate events was set in motion that reasonably could have been foreseen.

However, whether the negligent conduct proximately caused Little's harm must be considered.

Proximate cause is a term of art denoting the point at which legal responsibility attaches for the harm to another arising out of some act of defendant, *Flickinger Estate v. Ritsky*, [452 Pa. 69, 305 A.2d 40 (1973) ] W. Prosser, Law of Torts, § 41 (4th ed. 1971); and it may be

established by evidence that the defendant's negligent act or failure to act was a substantial factor in bringing about the plaintiff's harm. *Flickinger Estate v. Ritsky, supra; Whitner v. Lojeski,* 437 Pa. 448, 263 A.2d 889 (1970) (plurality opinion); *Majors v. Brodhead Hotel,* 416 Pa. 265, 205 A.2d 873 (1965); *Diakolios v. Sears Roebuck & Co.,* 387 Pa. 184, 127 A.2d 603 (1956); *Simon v. Hudson Coal Co.,* 350 Pa. 82, 38 A.2d 259 (1944); *Frangis v. Duquesne Light Co.,* 232 Pa. Super. 420, 335 A.2d 796 (1975). The defendant's negligent conduct may not, however, be found to be a substantial cause where the plaintiff's injury would have been sustained even in the absence of the actor's negligence. *Majors v. Brodhead Hotel, supra; DeAngelis v. Burns,* 404 Pa. 230, 171 A.2d 762 (1961); *Frangis v. Duquesne Light Co., supra;* Restatement, § 432.

It is the plaintiff's burden to prove that the harm suffered was due to the conduct of the defendant. As in many other areas of the law, that burden must be sustained by a preponderance of the evidence. *Cwiakala v. Paal,* 427 Pa. 322, 235 A.2d 145 (1967); *Zeman v. Canonsburg Boro,* 423 Pa. 450, 223 A.2d 728 (1966); *Amon v. Shemaka,* 419 Pa. 314, 214 A.2d 238 (1965). Whether in a particular case that standard has been met with respect to the element of causation is normally a question of fact for the jury; the question is to be removed from the jury's consideration only where it is clear that reasonable minds could not differ on the issue. *Topelski v. Universal South Side Autos, Inc.,* 407 Pa. 339, 180 A.2d 414 (1962); Restatement § 434; W. Prosser, Law of Torts, § 45 (4th ed. 1971); F. Harper and F. James, The Law of Torts, Vol. 2 § 20.2 (1956). In establishing a *prima facie* case, the plaintiff need not exclude every possible explanation of the accident; it is enough that reasonable minds are able to conclude that the preponderance of the evidence shows defendant's conduct to have been a substantial cause of the harm to plaintiff. *Finney v. G.C. Murphy, Co.,* 406 Pa. 555, 178 A.2d 719 (1962). Thus, once a plaintiff has established facts from which a jury

could reasonably conclude that defendant's actions were a substantial factor in bringing about the harm,

"... 'the fact that some other cause concurs with the negligence of the defendant in producing an injury does not relieve the defendant from liability unless he can show that such other cause would have produced the injury independently of his negligence,' *Carlson v. A. & P. Corrugated Box Corporation,* 364 Pa. 216, 223, 72 A.2d 290, 293 (1950). *See Yenchko v. Grontkowski,* 385 Pa. 272, 122 A.2d 705 (1956)." *Majors v. Brodhead Hotel, supra,* 416 Pa. at 273, 205 A.2d at 878. *Hamil v. Bashline,* 481 Pa. 256, 265–6, 392 A.2d 1280, 1284–5, (1978).

■ Our review of the evidence persuades us that the issue of proximate cause was properly reserved for the jury since this is not such a clear case that reasonable minds could not differ on what caused Little's harm. The jury could find that the Bureau's negligent misrepresentation of Little's responsibilities as a taxpayer set the wheels in motion. Little complied with the erroneous advice. Subsequently, she failed to retrieve her mail. Moreover, the magistrate demanded a cash bond; her attorney told her she could not get out of jail until after the weekend. Appellant was not able to show at trial, nor on appeal, that any of these other causes would have produced the injury independently of its own negligence.[2] Thus, it is not relieved of liability on this theory.

As unusual and extraordinary as the events in this case are, their resolution was correctly reserved for the jury's collective mind. What the Bureau's employee should have realized might be a result of her inaccurate advice and what a reasonable person would regard as virtually impossible a result were fact questions for the jury. We are satisfied that the jury was able to decide, from the facts presented at

---

**2.** "... the fact that some other cause concurs with the negligence of the defendant in producing an injury does not relieve the defendant from liability unless he can show that such other cause would have produced the injury independently of his negligence." *Majors v. Brodhead Hotel, supra,* at p. 17.

trial, that the harm suffered by Little was proximately caused by the negligence of the Bureau.

The next question concerns what harm was suffered by Little, and whether the award of $20,000 in damages for humiliation, degradation, and mental anguish was correct under Pennsylvania law. The tort for which the jury found the Bureau liable was negligent misrepresentation. The court, using the language of the Restatement of Torts 2d § 552, instructed the jury in this manner:

> It is quite clear that in this case the defendant had a duty not to hold itself out as something it was not to the detriment of others who would reasonably rely upon that representation, and in that connection, the law said that one who in the ocurse of his business, profession, or employment or in any other transaction in which he has a pecuniary interest supplies false information for the guidance of others in their business transactions is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Appellant argues that only in cases involving intentional torts have Pennsylvania courts seen fit to grant recovery for mental suffering and humiliation. These include false imprisonment, malicious prosecution, libel, and invasion of privacy. Moreover, it contends, the tort of negligent infliction of mental distress will give rise to damages for mental anguish. *Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970); *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979). However, it argues that in the remaining causes of action premised on negligence, that recovery for mental anguish has been allowed only where there is some concomitant physical injury. Therefore, appellant argues, Little should not have been entitled to $20,000 for her mental suffering.

Considered in isolation from each other, these statements by appellant are true. With intentional torts such as false imprisonment and malicious prosecution, the harm suffered by plaintiffs is considered to be damage in and of itself.

*See Shelton v. Evans,* 292 Pa. Superior Ct. 228, 437 A.2d 18 (1981), an action for malicious prosecution, in which the plaintiff was awarded $20,000 in compensatory damages for his unwarranted arrest in his home in front of his wife, on four criminal complaints, the fact that he almost went to jail, and that he was made to defend himself against spurious charges at two separate hearings.

The tort negligent infliction of mental distress, which specifically deals with bystander liability, has experienced a rapid evolution in this state. The abrogation of the physical impact rule in *Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970) meant that "where the plaintiff was in personal danger of physical impact because of the direction of a negligent force against him and where plaintiff actually did fear the physical impact ... he could recover for the shock, mental pain, and physical injuries attendant to the negligent incident even though he was not struck by the negligent force." *Id.,* 436 Pa. at 413, 261 A.2d at 90. Then in *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979), a plurality opinion by (now Chief) Justice Nix, the Supreme Court of Pennsylvania acknowledged that in third party cases, the "zone of danger test" of *Niederman v. Brodsky,* could be unfairly restrictive. The Court said:

"This new awareness of the unfairness of the zone of danger requirement in ... cases [involving a parent who has suffered emotional harm from witnessing a tortious assault upon his or her minor child] is based upon the implicit acceptance that the emotional impact upon a parent witnessing the killing of a minor child is at least as great and legitimate as the apprehension that is inspired by plaintiff being personally within the zone of danger." *Sinn v. Burd,* 486 Pa. at 156–157, 404 A.2d at 677.

Then, in another bystander case, the Supreme Court allowed action for mental distress to parents of an unplanned, unwanted, genetically defective child. *Speck v. Finegold,* 497 Pa. 77, 439 A.2d 110 (1981) (Mr. Justice Flaherty, joined by Messrs. Justice Larson, Kaufman, and

Chief Justice O'Brien concluded that mental distress damages could be recovered.) But, then, in *Mason v. Western Pa. Hospital*, 499 Pa. 484, 453 A.2d 974 (1982), the Court denied the emotional costs of raising an unplanned healthy child because of the Commonwealth's public policy favoring the joy of a healthy child as outweighing the costs of raising it as a matter of law. (The child was unexpected because a sterilization procedure had been negligently performed.)

Instantly, the tort for which appellant was found to be liable was negligent misrepresentation. Appellant argues that since that cause of action did not involve any intentional conduct, physical impact, or fear of physical impact, Little should not be entitled to damages for humiliation and mental suffering. However, prior precedent should not preclude recovery merely because an unusual result has not been preceded by a similar result in another case.[3] This is because it is fundamental that one may seek redress for every substantial wrong, and that a wrongdoer is responsible for the natural and probable consequences of his misconduct. *Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973). We do not believe that damages for humiliation and degradation, as the only substantial harm flowing from appellant's imprisonment, should be denied her only because pecuniary harm and not imprisonment has occurred in the past because of a defendant's negligent misrepresentation. As the Common-

**3.** In a case in which a plaintiff sued his public defender claiming his negligence resulted in plaintiff's imprisonment, our court never reached the merits of the action, as it was time-barred. *Moore v. McComsey*, 313 Pa. Superior Ct. 264, 459 A.2d 841 (1983). Other causes of action against attorneys for malpractice are usually treated as breaches of contract, rather than as negligence. *Id.*, 313 Pa.Superior Ct. at 268, 459 A.2d at 844. Actions against police officers premised on negligence as resulting in imprisonment are usually resolved on immunity grounds, *cf Evans v. Elizabeth Police Department, et al.*, 190 N.J.Super. 633, 464 A.2d 1212 (1983) (Police officers should not have to worry about civil liability in the performance of their duties.)

wealth Court stated in *Vattimo v. Lower Bucks Hospital, Inc.*, 59 Pa. Cmwlth. 1, 428 A.2d 765, 768 (1981),[4]

> If emotional harm to James in fact resulted then, it is argued, the fortuitous avoidance of physical harm will not foreclose the question of the hospital's liability. We agree and note in this regard that "[t]he defendant need not foresee 'that an injury should occur *in the exact way* and to the same extent as that which did occur,' he need only foresee that some injury of a like general character is not unlikely to result from failure to use care." *Thornton v. Weaber*, 380 Pa. 590, 595, 112 A.2d 344, 347 (1955) (emphasis in original) (quoting Jeremiah Smith in "Legal Cause in Actions of Tort," "Selected Essays on the Law of Torts" 649, 690).

*Vattimo* was a case premised on the negligence of a mental hospital in caring for a paranoid-schizophrenic with a fascination with fire, who was placed in a semi-private room without supervision. A few hours after his parents left the hospital, James allegedly set a fire in the room, which resulted in the death of his roommate. The cause of action which the Supreme Court permitted a jury to decide was James' claim for emotional distress, humiliation, embarrassment and anxiety, even though James may have suffered no physical harm.

We see no reason to deny a jury's determination that damages for emotional harm be awarded in the absence of physical harm in the instant case. It is indeed fortuitous that Little suffered no physical harm from the negligence of the Bureau. She did testify as to her humiliation, embarrassment, indignation, and emotional distress at having to spend five days in jail for noncompliance with a tax law occasioned by reliance on the negligent misrepresentation of the Bureau.

We see no reason why the *Restatement of Torts*, 2d, § 905(b) and Comment (d) (1979) did not apply to this case.

---

4. The Supreme Court affirmed the Commonwealth Court's approval of James Vattimo's cause of action for his own emotional distress; *see Vattimo v. Lower Bucks Hospital, Inc.*, 502 Pa. 241, 465 A.2d 1231 (1983) (Messrs. Justice Hutchinson, Roberts, Larsen, and Zappala concurring.)

*Compensatory Damages for Nonpecuniary Harm*

Compensatory damages that may be awarded without proof of pecuniary loss include compensation

. . . . .

(b) for emotional distress.

. . . . .

(d) *Humiliation.* One who has a cause of action for a tort may be entitled to recover as an element of damages for that form of mental distress known as humiliation, that is, a feeling of degradation or inferiority or a feeling that other people will regard him with aversion or dislike. This state of mind may result from a physical harm, an imprisonment, a defamatory statement, the disruption of the marital relation, or even the deliberate trespass to land or destruction or dispossession of chattels.

■ Appellant contends that this comment on humiliation pertains only to intentional torts, like false imprisonment, and not to imprisonment which results from negligent misrepresentation. We see no reason to draw such a distinction, given our resolution of the foreseeability issue above. The lower court correctly charged on this section of the Restatement.

■ We feel confident in characterizing the situation of the within case as one presenting a unique question to our Court. The duty undertaken by the York County Earned Income Tax Bureau served to aid members of the public in complying with their own legally imposed duty, violation of which could result in fine or imprisonment. By their negligence in their duty, appellant invaded Little's intangible interest of, what Dean Prosser calls, "personality," or a dignitary interest. Prosser *Torts,* 528 (4th ed., 1973). The class of case which protect such interests gives rise to damages which are presumed, or the wrong is said to be damage in and of itself. *Id.*[5] Thus, we hold that where a

**5.** One author persuasively argues that if an interest, like freedom of movement, belonging to a plaintiff is infringed by a defendant, then it can be said that the plaintiff has suffered damage, and the plaintiff

negligent act of an entity which holds itself out as responsible for the collection of taxes and which works closely with taxing bodies which have the authority to prosecute individuals for noncompliance, erroneously advises an individual as to the manner in which she should file a certain return, which fact ultimately results in that individual's unjustified imprisonment, that entity may be found liable for the emotional distress suffered by the individual in reliance upon the negligent misrepresentation.

■ Appellant argues that $20,000 was an excessive amount because Little should have arranged to post the $500.00 cash bond, which fact would have shortened her time in jail and mitigated her damages. As this court remarked in *Shelton v. Evans, supra,* at p. 1200, "it is always suspect, when considering the adequacy or excessiveness of a verdict, to refer to the verdict in another case, for no two cases are the same." *Shelton, supra,* 292 Pa. Superior Ct. at 234, 437 A.2d at 21. Let us only comment that the chain of events as established at trial explain Little's inability to be released sooner than when she did. Moreover,

> [t]he duty of assessing damages is within the province of the jury and should not be interfered with by the court, unless it clearly appears that the amount awarded resulted from caprice, prejudice, corruption or some other improper influence. *Tonik v. Apex Garages, Inc.,* 442 Pa. 373, 378, 275 A.2d 296, 299 (1971).

We cannot say that the jury's verdict of $20,000 was excessive when faced with the parade of horribles which resulted in Little's imprisonment. She was shown to be—and appellant admits such—an upstanding citizen who had complied with all tax laws according to appellant's advice. The

should have an action, whether the defendant caused the damage intentionally or indirectly. "... [T]he negligent infliction of loss of freedom of movement should give rise to a claim for damages. The damages will depend on the duration of the loss of freedom, the degree of humiliation, illness resulting, and so forth." Heffey, "Negligent Infliction of Imprisonment: Actionable *'Per Se'* or *'Cum Damno'*?" 14 Melbourne U.L.R. 53, 64 (1983).

Kafkaesque scenario of her experience provided the jury with an adequate basis upon which to provide recovery.

Order of the lower court affirmed.

WIEAND, J., filed a dissenting opinion.

WIEAND, Judge, dissenting:

I respectfully dissent. The negligent advice given by an employee of York County Earned Income Tax Bureau was so attenuated by subsequent independent and highly extraordinary intervening events that such negligence cannot be said to be the legal cause of appellee's imprisonment. Therefore, I would reverse and cause judgment to be entered for the appellant.

Jeanne E. Little was an employee of General Telephone Company. Her employer customarily deducted local wage taxes from her salary and paid them to the local taxing authorities. In 1976, Ms. Little moved from the Central York School District to the Spring Grove District. Her wage tax returns were annually prepared by H & R Block and appropriately mailed after she had signed the same. In 1978, she moved from the Spring Grove District to Red Lion. Her tax returns for that year were prepared for her by a friend. Because Ms. Little had failed to receive tax forms from the Spring Grove District,[1] she called the York County Earned Income Tax Bureau to inquire about the filing procedure to be followed by one who had changed residence. She testified that an unidentified person, who answered the phone, promised to mail her a form and told her one filing would suffice. That form was received, completed, and mailed to the Earned Income Tax Bureau. The Spring Grove District was not serviced by the Bureau, however, and Ms. Little's tax return was not forwarded to that district.

A representative of the Spring Grove District testified that after Ms. Little's delinquency had become apparent, a

1. A representative of the School District testified that Ms. Little's name was on the tax rolls and that the District had mailed forms in December to all persons on its tax rolls.

tax return and a notice to complete and file within three weeks were sent to her in Red Lion by first class mail. She said she didn't receive the letter. The School District showed, however, that the undelivered letter had not been returned to the sender. Therefore, it assumed that delivery of the notice had been made. When it received no response from the taxpayer, the School District caused notice to be sent by certified mail, return receipt requested. The post office sent three separate notices to the taxpayer, which, Ms. Little concedes, were duly received. She testified, however, that she was too busy to go to the post office for the certified letter, and the letter was eventually returned "unclaimed" to the School District.

The Spring Grove School District thereafter filed a complaint with Magistrate Hill, who issued not only a summons but a warrant for Jeanne Little's arrest. The warrant was served on appellee on Wednesday before Easter in 1980. When she declined to enter a plea of guilty, the magistrate set bail at $500. He then refused to accept a personal check for the bail and also refused to allow time for a friend to obtain the cash bail demanded. Because Ms. Little was not carrying adequate cash on her person to meet the demand of the magistrate, he ordered that she be committed to the York County Prison. An attorney was employed, but he did not get to see Ms. Little or otherwise contact her until Thursday evening. Inexplicably, the attorney then represented that he was powerless to obtain the client's release from prison until after the Easter holiday. Ms. Little was not released until Monday evening. The charges against her were subsequently dismissed when she completed a return at her hearing.

The issue of proximate cause includes a consideration of the degree of culpability in determining whether to hold an actor liable for negligent conduct. Seidelson, *Some Reflections on Proximate Cause*, 19 Duq.L.Rev. 1, 2–3 (1980); Morris, *Duty, Negligence and Causation*, 101 U.Pa.L.Rev. 189, 193–194 (1952). For reasons of propriety and fairness, the scope of a defendant's liability should not be wholly

disproportionate to the culpability of his act. Seidelson, *supra*. Proximate cause is used as a term of art to denote the point beyond which legal responsibility will not attach for a negligent act. *Hamil v. Bashline*, 481 Pa. 256, 265, 392 A.2d 1280, 1284 (1978).

To be a proximate cause, defendant's negligence must be a substantial factor in causing the plaintiff's harm—in this case, her alleged mental distress. *Hamil v. Bashline*, *supra; Takach v. B.M. Root Co.*, 279 Pa.Super. 167, 170, 420 A.2d 1084, 1086 (1980); *Noon v. Knavel*, 234 Pa.Super. 198, 208, 339 A.2d 545, 550 (1975); *Wisniewski v. The Great Atlantic and Pacific Tea Co.*, 226 Pa.Super. 574, 581–582, 323 A.2d 744, 748 (1974). Where the facts are not in dispute and the causal connection between the defendant's negligence and the plaintiff's injuries is clearly remote, the issue of proximate cause is a question of law for the court. *Flickinger Estate v. Ritsky*, 452 Pa. 69, 74, 305 A.2d 40, 43 (1973); *Liney v. Chestnut Motors, Inc.*, 421 Pa. 26, 29, 218 A.2d 336, 338 (1966); *Klimczak v. 7–Up Bottling Company of Philadelphia, Inc.*, 385 Pa. 287, 293, 122 A.2d 707, 710 (1956), *disapproved on other grounds, Smith v. Bell Telephone Company of Pennsylvania*, 397 Pa. 134, 153 A.2d 477 (1959); Restatement (Second) of Torts § 434(1)(a) (1965). See: *Vattimo v. Lower Bucks Hospital, Inc.*, 502 Pa. 241, 257–259, 465 A.2d 1231, 1239 (1983) (Nix, J., concurring and dissenting); Prosser, Law of Torts § 50 (1941).

In determining whether negligent conduct is a substantial factor in causing harm, consideration must be given to "the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it." Restatement (Second) of Torts § 433 (1965). Other factors may have such a predominant effect in bringing about the harm that the actor's negligent act is insignificant, and, thus, not a substantial factor. Restatement (Second) of Torts § 433, comment (d) (1965).

"An intervening force is one which actively operates in producing harm to another after the actor's negligent act or omission has been committed." Restatement (Second) of

Torts § 441(1) (1965).  In determining whether an intervening cause supersedes the actor's negligent act or omission so as to relieve the actor from liability a court must consider the following factors:

(a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

(b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

(c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him;

(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

Restatement (Second) of Torts § 442 (1965).

After examining the number of additional factors which contributed to Jeanne Little's imprisonment and examining them in the light of the considerations suggested by the foregoing sections of the Restatement, I would conclude as a matter of law that appellant's negligence was not the legal or proximate cause of her harm.

Jeanne Little's mental distress and humiliation were caused by her imprisonment, not by the Bureau's negligence in failing to advise her correctly.  Her humiliation was caused not because of mere tax liability or failure to file a necessary return.  Her wage taxes had been paid; they had been withheld from her wages by her employer, and had been paid to the school districts to which they were owed.  Her only apparent default had been a seeming failure to file an annual return with the school district from

which she had moved in mid year. In fact, this return had been forwarded to the York County Earned Income Tax Bureau and, because of the Bureau's negligence, had not been filed properly with the Spring Grove School District. Looking back from appellee's imprisonment and considering the many subsequent factors which brought it about, I find it inconceivable that appellant's negligence can reasonably be said to be the legal cause thereof. Appellant's negligence is entirely too remote.

In the first place, there is the matter of two notices sent to Ms. Little that a tax return had not been received by the Spring Grove School District. The first notice, although sent by first class mail, was neither delivered nor returned to the sender. The necessary inference is that it was lost in the mail. A second notice, sent by certified mail, was not received by Ms. Little because, despite three separate notices that it was being held for her in the post office, she found herself too busy to pick it up. If only one of the School District's notices had been received, it seems obvious that the apparent deficiency in failing to file a return would have been corrected. Instead, Jeanne Little remained blissfully ignorant that the School District had not received a copy of her tax return. Criminal prosecution followed.

Even if criminal prosecution for the failure to file a return could conceivably be said to have been caused proximately by the Bureau's negligence, the Bureau, nevertheless, was not responsible for the independent act of the magistrate who incarcerated appellee without a hearing during Holy Week because he rejected her explanation, insisted on cash bail and refused arbitrarily to accept a check or allow her reasonable time to obtain cash. Similarly, the Bureau's negligence was separate from and unrelated to the delay of counsel and his supine and inexplicable helplessness to obtain appellee's release from prison before the following Monday evening. At this point we are four or five steps removed from appellant's negligence. At least four independent, intervening causes have coincided to bring about appellee's five day incarceration without a

hearing. This combination of intervening causes for which others were responsible produced a result entirely different than one could reasonably anticipate as a consequence of the Bureau's negligence. Indeed, the result was one which even the majority conceives as being truly extraordinary. Under these circumstances, holding the Bureau responsible for appellee's imprisonment without reasonable opportunity to post bail and without a hearing is wholly disproportionate to the culpability of the Bureau's mishandling of Ms. Little's tax inquiry. Indeed, the Bureau's negligence pales into insignificance when the predominant effect of these intervening causes is considered. I would hold, therefore, that the Bureau's negligence was not the legal or proximate cause of appellee's harm.

Appellant's tortious act, in any event, was an act or omission of simple negligence. Its tortious conduct was not intentional, nor was it reckless or wanton. Appellee's cause of action is not one for false arrest. it is an action to recover for embarrassment and hurt feelings resulting from an imprisonment allegedly caused by the negligent act of another. Whether damages for such embarrassment and hurt feelings, where there has been neither physical nor mental injury, can be recovered against one who has been guilty of simple negligence is a vexing issue.

As a general rule, damages for mental anguish or humiliation, where there has been no physical injury, can be recovered only in cases of tortious conduct committed intentionally, wantonly or recklessly. See: 22 Am.Jur.2d Damages § 195 (1965). The general rule is stated in Section 436A of the Restatement (Second) of Torts as follows: "If the actor's conduct is negligent as creating an unreasonable risk of causing ... emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional disturbance." This section was adopted and followed in *Banyas v. Lower Bucks Hospital,* 293 Pa.Super. 122, 128–129, 437 A.2d 1236, 1239–1240 (1981). See also: *Plummer v. Abbott Laboratories,* 568 F.Supp.

920 (D.R.I.1983); *Sypert v. United States,* 559 F.Supp. 546 (D.D.C.1983) (applying Virginia law); *Avallone v. Wilmington Medical Center, Inc.,* 553 F.Supp. 931 (D.Del.1982); *White v. United States,* 510 F.Supp. 146, 149 (D.Kan.1981) (applying Georgia law); *Keck v. Jackson,* 122 Ariz. 114, 115, 593 P.2d 668, 669 (1979); *Barnhill v. Davis,* Iowa, 300 N.W.2d 104, 107–108 (1981); *Payton v. Abbott Labs,* 386 Mass. 540, 437 N.E.2d 171 (1982). The reasons for disallowing damages for mental distress alone where the tortfeasor's conduct has not been intentional, reckless or wanton are stated in comment b to Restatement (Second) of Torts § 436A as follows:

> Emotional disturbance which is not so severe and serious as to have physical consequences is normally in the realm of the trivial .... It is likely to be so temporary, so evanescent, and so relatively harmless and unimportant, that the task of compensating for it would unduly burden the courts .... [Moreover] in the absence of the guarantee of genuineness provided by resulting bodily harm, such emotional disturbance may be too easily feigned, depending, as it must, very largely upon the subjective testimony of the plaintiff [and may] open too wide a door for false claimants who have suffered no real harm at all. [Finally,] where the defendant has been merely negligent, without any element of intent to do harm, his fault is not so great that he should be required to make good [for mere embarrassment].

The majority relies on Section 905 of the Restatement (Second) of Torts to sustain an award solely for mental distress in the instant case. That section, however, does not support the rule which the majority espouses. It does no more than recognize that in some causes of action, non-pecuniary harm, such as emotional distress, may be compensated. The Restatement does not pretend to create a cause of action for negligent infliction of emotional distress. This is readily apparent from comment c, which provides as follows:

c. *Emotional distress in general.* The principal element of damages in actions for battery, assault or false imprisonment, as well as in actions for defamation, malicious prosecution and alienation of affections, is frequently the disagreeable emotion experienced by the plaintiff. In other cases, *protection against disagreeable emotions not involving bodily pain is ordinarily given only in an action for infringement of some other interest. Thus one who insults or annoys another, thereby causing a third person to suffer fright or physical discomfort, is ordinarily not subject to liability to the third person unless bodily harm results.* (See §§ 312 and 313). *Whether there can be an action merely for harm to the feelings presents a question of the existence of the cause of action and is not a problem of the amount of damages.*

Restatement (Second) of Torts § 905, comment c (1979).

The Pennsylvania decisions have addressed specific fact patterns without establishing a per se rule. In *Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970), the Supreme Court recognized a cause of action for emotional distress caused to one who had been placed in imminent danger of physical impact by a negligent force directed toward him. In that case, however, the emotional distress had manifested itself in "coronary insufficiency, coronary failure, angina pectoris and possible myocardial infarction." *Id.*, 436 Pa. at 403, 261 A.2d at 84. In *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979), a plurality of the Court suggested a "zone of danger test" which would allow recovery for mental anguish sustained by a parent who witnessed the tortious killing of a child. Even there, however, the Court was reviewing an order sustaining a demurrer to a count in the complaint which alleged "mental pain and suffering resulting in severe depression and an acute nervous condition." *Id.*, 486 Pa. at 151, 404 A.2d at 674. In *Speck v. Finegold,* 497 Pa. 77, 439 A.2d 110 (1981), the Court was called upon to determine whether parents could maintain an action against a physician whose negligence had resulted in the

wrongful birth of a child with neurofibromatosis. The Court held that such an action could be maintained and that damages for mental distress caused to the parents could be recovered. However, in *Mason v. Western Pennsylvania Hospital,* 499 Pa. 484, 453 A.2d 974 (1982), the Court held that a parent could not recover damages for emotional distress because of the "wrongful birth" of a normal, healthy child.

In the instant case, there was neither direct injury to appellee as a result of appellant's negligence nor physical injury resulting from the embarrassment which she felt upon being imprisoned. And yet, it is readily understandable that unfeigned embarrassment and humiliation will in all probability result to a person who has been unnecessarily imprisoned. Recognizing that humiliation in cases of imprisonment may be greater than in other cases of emotional distress and that negligence resulting in imprisonment may require a different rule, but also recognizing the serious consequences of such a rule, the Restatement (Second) of Torts has declined to take a position. By caveat to Section 35 and in comment g of Section 905, the Restatement has expressed no view on whether a plaintiff should be permitted to recover damages for harm to his or her feelings when deprived of freedom by the negligent act or omission of another person.

The majority has entered this vacuum and has held that recovery for emotional distress in such cases can be premised on negligence alone. By so doing, it has placed members of the legal profession, particularly the members of the criminal trial bar, at grave and, in my judgment, unnecessary risk. I find it unnecessary to establish such a cause of action, with its potential for mischief, in the instant case. Appellant's negligence was so remote from, and so lacking in relative culpability in bringing about, appellee's emotional distress that it was not the legal cause thereof. I would reverse and direct the entry of judgment n.o.v. in favor of appellant.