## McKay v. Geadah

*Spero Lappas*, for plaintiffs.
*R. James Reynolds*, for defendant.

BAYLEY, *J.*, December 21, 1988 — This suit was commenced by plaintiffs Margaret McKay and her son, Brett McKay, against defendant Fouad A. Geadah M.D., in the Court of Common Pleas of Dauphin County. By stipulation counsel agreed that venue was improper in Dauphin County. The case was transferred to this county of proper venue. Plaintiffs' complaint alleges five causes of action: negligent infliction of emotional distress as to Margaret McKay (count I); intentional infliction of emotional distress as to Margaret McKay (count II); invasion of privacy and breach of the physician/patient confidences as to Margaret McKay (count III); negligent infliction of emotional distress as to Brett McKay (count IV); and intentional infliction of emotional distress as to Brett McKay (count V).

Plaintiffs' allege that in 1978 and 1979 Margaret McKay was a patient of Dr. Geadah for surgical treatment in rehabilitating facial injuries she received in an automobile accident. Pursuant to that

surgery, pre-operative and post-operative photographs were taken of her condition. In March 1987, while participating in a career orientation program for students at the Harrisburg Academy, a private school for grades one through twelve in Wormleysburg, Cumberland County, Dr. Geadah displayed those photographs and disclosed some information concerning Mrs. McKay's medical treatment. Plaintiffs allege that some of that information was false and that Dr. Geadah had never been given permission to display the photographs or make any disclosures about her treatment to the students at the Harrisburg Academy or elsewhere.

As fate would have it, one of the school children in attendance at this program was Brett McKay. As a result of his witnessing this program, he avers that he was caused "to be upset, mortified, embarrassed, distraught, and to suffer mental distress." Upon her learning of Dr. Geadah's presentation, Margaret McKay avers that she was caused "to be upset, embarrassed, mortified, distraught, and to suffer severe emotional distress." Defendant has filed preliminary objections to the complaint in the nature of demurrers to all counts. A demurrer admits "for the purpose of testing the sufficiency of the complaint all properly pleaded facts, but not conclusions of law." *Balsbaugh v. Rowland*, 447 Pa. 423, 290 A.2d 85 (1972).

### Negligent Infliction of Emotional Distress

#### Counts I and IV

The general rule as to a cause of action for negligent infliction of emotional distress is that liability may not be predicated absent a manifest showing of physical injury. *Sinn v. Burd*, 486 Pa. 146, 404 A.2d

672 (1979).[1] In *Houston v. Texaco Inc.*, 371 Pa. Super. 399, 538 A.2d 502 (1988), the Superior Court, reversing this court, held that plaintiff, who over a period of time ingested water that defendant negligently contaminated with gasoline, had no legally recognizable cause of action for negligent infliction of emotional distress absent a manifest indicia of physical injury. The court disagreed with our conclusion that those facts represented compelling circumstances to take the case out of the general rule requiring the showing of a physical injury. See *Little v. York County Earned Income Tax Bureau*, 333 Pa. Super. 8, 481 A.2d 1194 (1984).

In the case sub judice, plaintiffs allege that they were emotionally impacted by Dr. Geadah's actions, but they do not allege any resulting physical injury. Certainly here there are no compelling circumstances and without any attendant, legally recognizable physical injury, defendant cannot be liable. Accordingly, Margaret and Brett McKay have not stated a cause of action for the separate tort of negligent infliction of emotional distress.[2]

### Intentional Infliction of Emotional Distress

### Counts II and V

A cause of action for intentional infliction of emotional distress requires conduct on the part of the

1. In *Sinn v. Burd* the Supreme Court held that a cause of action for negligent infliction of emotional distress would lie for a plaintiff who was near the scene of the negligent act, who was a direct contemporary witness to the act, who had a direct family relationship with the victim of the tort, and whose emotional distress was manifested in a physical injury or bodily harm.

2. We need not discuss the other requirements of *Sinn v. Burd* because plaintiffs clearly have not alleged facts necessary to meet the "physical injury" test.

tortfeasor which is extreme or outrageous. *Kazatsky v. King David Memorial Park*, 515 Pa. 183, 527 A.2d 988 (1987). In *Kazatsky*, plaintiffs alleged a count for intentional infliction of emotional distress in a dispute involving defendant's maintenance of the gravesite of their deceased children. The Supreme Court held that there could be no liability on such a claim without proof of actual emotional distress by competent medical evidence. Since there was no such evidence in *Kazatsky*, the court did not determine the applicability of a cause of action for intentional infliction of emotional distress to the facts in that case. However, it did provide guidance as to the conduct necessary to maintain such an action. The foundation for the dicta in *Kazatsky* can be found in section 46(1) of the Restatement (Second) of Torts (1965), which provides:

"§46. Outrageous Conduct Causing Severe Emotional Distress —

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

The comment to section 46 suggests the type of conduct that would constitute extreme and outrageous conduct.

"*Extreme and outrageous conduct* — The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where

the conduct has been so outrageous in character, and so extreme in degree, as to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

"The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's [sic] feelings are hurt."

We conclude that the alleged conduct of defendant before a group of students in an educational setting, in discussing his treatment of plaintiff and showing photographs of an operation that he conducted, is not extreme and outrageous. At most plaintiffs have alleged that Dr. Geadah provided the school children with information concerning his medical practice, showed them photographs of plaintiff as examples of the results obtainable by rehabilitative surgery, and made some misstatements as to the facts of plaintiff's treatment which had occurred some eight years earlier. Mrs. McKay was not present nor is it alleged that Dr. Geadah knew or had any reason to believe that her son Brett would be present. This alleged conduct does not reach that level of extreme and outrageous conduct whereby a trier of fact could conclude that Dr. Geadah intentionally or recklessly caused severe emotional distress to Mrs. McKay and her son. Defendant's conduct cannot be regarded as atrocious and utterly

intolerable in a civilized community. Thus, plaintiffs have not pleaded facts sufficient to state a cause of action for the separate tort of intentional infliction of emotional distress.

## Breach of Confidentiality/Invasion of Privacy

### Count III

In order for the disclosure of information to be actionable at law either as a breach of physician/patient confidence or as the invasion of privacy, the disclosure must be made without legal justification or excuse. See *Moses v. McWilliams,* 2062 Philadelphia 1985 (1988). An excellent perspective as to causes of action related to confidential duties of physicians to their patients is set forth in *Hammonds v. Aetna Casualty & Surety Co.,* 243 F.Supp. 793 (N.D. Ohio 1965).[3] In that case a physician and physician's malpractice insurance carrier were sued when the insurance carrier obtained from the physician some information about a patient prior to the initation of any lawsuit. The district court concluded that, absent a statutory prohibition, a physician could be held liable for such an intentional unauthorized divulgence of confidences. The court cited *Alexander v. Knight,* 197 Pa. Super. 79, 177 A.2d 142 (1962) (aff'd. per curiam on the opinion of the trial judge), in which the court stated:

"We are of the opinion that members of a profession, especially the medical profession, stand in a confidential or fiduciary capacity as to their patients. They owe their patients more than just medical care for which payment is accepted; there is a

---

3. See also, the dissenting opinion of President Judge Cirillo in *Moses.*

duty of total care; that includes and comprehends a duty to aid the patient in litigation, to render reports when necessary and to attend court when needed."

In Pennsylvania there is a narrow physician/patient privilege statute which protects physicians when they release patient information after a suit is filed.[4] The Judicial Code at 42 Pa. C.S. §5929, provides:

"No physician shall be allowed, in any civil matter, to disclose any information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity, which shall tend to blacken the character of the patient, without consent of said patient, except in civil matters brought by such patient, for damages on account of personal injuries."[5]

The purpose of this statute is to allow and enhance a confidential atmosphere in which the patient will provide all possible information to the physician, and thereby will receive the most effective treatment. See *In re June 1979 Allegheny County Investigating Grand Jury*, 490 Pa. 143, 415 A.2d 73 (1980).[6] In the present case, since there was no suit filed which prompted the disclosures by Dr. Geadah, section 5929 does not foreclose Mrs. McKay's tort claim for a breach of confidentiality. As suggested in *Moses v. McWilliams, supra,* absent a legal justification or excuse, the physician/patient

---

4. See *Feingold v. SEPTA,* 512 Pa. 567, 517 A.2d 1270 (1986).

5. This current section 5929 of the Judicial Code, the Act of July 9, 1976, P.L. 586, as amended, was formerly the Act of June 7, 1907, P.L. 462, §1, 28 P.S. §328.

6. In this case a hospital sought to protect the medical records of its patients based upon their alleged privacy rights from disclosure in a criminal investigation pursuant to a subpoena duces tecum. The Supreme Court held that an investigating grand jury had a legal right to the information.

relationship is protected from disclosures of information by physicians.

In *Holtzman v. Zimmerman,* 47 D. & C. 3d 608 (1988), the issue raised was "[w]hen a civil suit has been instituted may a defense counsel conduct ex parte discussions with any of plaintiff's prior treating physicians and/or retain them as defense expert witnesses?" Notwithstanding the dicta to the contrary in *Alexander v. Knight, supra,* we held that the civil suit precluded plaintiff from obtaining relief from her prior treating physician's conduct.[7] Relying on an analysis of the applicability of section 5929, we stated that "we do not believe it is proper for a court to engraft upon a physician-patient relationship *a duty after a civil suit is filed* which is not set forth in Pennsylvania law." (emphasis supplied)

In *Moses v. McWilliams, supra,* a present physician communicated with a prior physician's attorney in a malpractice suit by disclosing information being used in the treatment of the patient. The Superior Court held that "within the narrow factual context of this case appellant has failed to state a cause of action for breach of confidentiality." The court concluded, without comment on the dicta in *Alexander v. Knight,* that a physician who is interviewed in connection with a judicial proceeding is protected from tort claims arising from that interview.[8] It is noted, however, that:

"[I]f a doctor makes statements that are clearly unrelated to a lawsuit, *there might be a cause of action stated against him for breach of confidentiality.* We, however, need not make such a finding be-

7. That dicta was that a physician is under a duty to refuse affirmative assistance to a patient's antagonist in litigation.

8. Our holding in *Holtzman,* which predated the Superior Court's decision in *Moses* by six months, is consistent with the holding in that case.

cause that issue is not before us."[9] (footnote omitted)

The court further stated:

"[A] majority of jurisdictions that have considered the broad issue of whether to recognize a general cause of action for a physician's breach of confidentiality have allowed such a claim. ... When the cause of action has been recognized it is in cases where there have been *extra-judicial* disclosures of confidential information or in cases . . . where the plaintiff's physical condition has not been in issue."

Of particular significance is that the Superior Court in *Moses* was not willing to dismiss per se any possible claim by a patient in Pennsylvania for breach of confidentiality by a physician. In fact, the dicta was to the contrary, as the court stated:

"[T]he Pennsylvania Physician-Patient Privilege Statute reflects the concept that there is *a reduction in a patients privacy interest and rights of confidentiality* when he or she files suit for personal injuries." (emphasis supplied)

A "reduction" in a patient's "rights of confidentiality" means to us that the patient retains those rights when the statute does not apply. Thus, the Superior Court appears inclined to recognize a cause of action for breach of a right of confidentiality under certain circumstances where the protection afforded by section 5929 is not applicable.

The issue of whether there is a cause of action in Pennsylvania against a physician for the non-privi-

9. The holding in *Moses* was supported by eight of the nine judges sitting en banc. The dissenter, President Judge Cirillo, on the facts of that case, believed that a cause of action should exist in the commonwealth for a physician's breach of a confidential relationship even after plaintiff filed a medical malpractice action.

leged breach of a confidential relationship was not before the Superior Court in *Moses,* or this court in *Holtzman,* but is now squarely presented in this case.[10] The critical distinction here from the facts in *Moses, Holtzman* and *Alexander* is that in those cases the disclosure of patient information by a physician occurred after the patient filed a lawsuit.

We believe that the conduct of Dr. Geadah as alleged by Margaret McKay constitutes an appropriate fact situation to recognize in Pennsylvania, the tort of breach of patient confidentiality by a physician. Defendants alleged disclosures were not privileged as was the case in *Moses* and *Holtzman.* At this stage of the pleadings there is no indication that anything occurred in the eight years between the time plaintiff received the medical treatment and Dr. Geadah made the alleged disclosures about that treatment, which would have diminished plaintiff's expectation of confidentiality. Nor is there any indication that Dr. Geadah had any legal justification or excuse to make the alleged disclosures.[11] On the facts of this case, we agree with the analysis made by President Judge Cirillo in *Moses,* that ethical considerations and the commonwealth's medical licensing statutes provide support for recognizing a

10. The court in *Moses* noted that the issue of confidentiality raised in that case was one of "[f]irst impression and of great societal importance." As we outlined in *Holtzman,* the issue raised in relation to Pennsylvania's physician/patient privilege statute has been considered numerous times in the trial courts of Pennsylvania. To our knowledge, however, no court in the commonwealth has considered the precise issue presented in the case sub judice.

11. As plaintiff points out in her brief, the facts alleged do not require that we decide whether a cause of action would lie in a situation where a physician, without consent, disclosed information regarding treatment of a patient at a scientific meeting or before a group of physicians or medical students.

cause of action for breach of a confidential physician/patient relationship. Accordingly, Margaret McKay is entitled to bring an action for the alleged breach of that relationship.

Although combined in count III of the complaint, plaintiff's alleged cause of action for the invasion of privacy is distinct from an action for the breach of a confidential physician/patient relationship. *Aquino v. Bulletin Co.,* 190 Pa. Super. 528, 154 A.2d 422 (1959). A cause of action for invasion of privacy can be based upon: (1) intrusion upon seclusion; (2) appropriation of name or likeness; (3) publicity given to private life, or (4) publicity placing a person in a false light. *Marks v. Bell Telephone Co. of Pa.,* 460 Pa. 73, 331 A.2d 424 (1975). In *Harris by Harris v. Easton Publishing Co.,* 335 Pa. Super. 141, 483 A.2d 1377 (1984), the Superior Court noted:[12]

"The Restatement (Second) of Torts §§652B-E set forth those four categories of invasion of privacy. No Pennsylvania case has specifically adopted the final draft of the Restatement regarding these sections, although our Supreme Court did adopt section 652D, as it appeared in Tentative Draft no. 13 of the Restatement (Second) of Torts. *Vogel v. W. T. Grant Co.,* 458 Pa. 124, 327 A.2d 133 (1974) (other citations omitted). . . . We believe that the Restatement most ably defines the elements of invasion of privacy as that tort has developed in Pennsylvania."

Section 652D of the Restatement (Second) of Torts states:

"*Publicity Given to Private Life* — One who gives publicity to a matter concerning the private life of

---

12. This was a claim for invasion of privacy involving a newspaper's publication of facts concerning the private lives of a welfare applicant and her family from information supplied by the Department of Public Welfare.

another is subject to liability to the other for invasion of his privacy, if the matter published is of a kind that

"(a) would be highly offensive to a reasonable person and

"(b) is not of legitimate public concern to the public."

In the present case we conclude that there are sufficient facts pleaded, which if proven, would allow a jury to conclude that (1) defendant publicly disclosed information about Mrs. McKay to an audience of school children; (2) the information was private in that it concerned medical treatment of a personal nature;[13] (3) the release of the information could be highly offensive to a reasonable person of ordinary sensibilities, and (4) the information was not of a legitimate public concern. Thus Margaret McKay, as the subject matter of the alleged disclosures made by Dr. Geadah, has a cause of action for invasion of privacy.[14]

## CONCLUSION

Based upon the foregoing, we will sustain defendant's demurrers to counts I, II, IV and V of plain-

---

13. It should be noted that the Restatement requires that the recipient of the private information have no prior knowledge of that fact. We doubt that those in the audience at the Harrisburg Academy would have had any knowledge about Mrs. McKay's medical treatment although at the moment that is uncertain.

14. See also, *Moses v. McWilliams, supra,* where the Superior Court referred to section 5929 of the Judicial Code as reflecting "[t]he concept that there is a reduction in a patient's privacy interest." As in our analysis of a cause of action for breach of a confidential relationship, a "reduction" in a patient's "privacy interest" means that the patient retains that interest where the statute does not apply.

tiffs' complaint.[15] Since we have concluded that Margaret McKay has stated causes of action in count III of the complaint for breach of a physician/patient relationship and an invasion of privacy, the following order is entered.

## ORDER OF COURT

And now, December 21, 1988

(1) Defendant's demurrers to counts I, II, IV and V of plaintiffs' complaint are granted. Counts I, II, IV and V, are dismissed.

(2) Defendant's demurrer to count III of plaintiffs' complaint is denied.

---

15. Defendant also preliminarily objected claiming that Brett McKay lacked capacity to sue. In light of our granting demurrers to all causes of action alleged by Brett McKay, this objection is moot.