Amon *v.* Shemaka, Appellant.

Argued October 8, 1965. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Allen D. McCrady,* with him *McCrady & Nicklas,* for appellants.

*Stephen J. Harris,* with him *Litman, Litman and Harris,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, November 9, 1965:

These are appeals by the defendants in a negligence suit from the Judgments of the lower Court which, after a jury verdict for plaintiff, dismissed defendants' motions for a new trial.

On the evening of May 10, 1960, plaintiff went to defendants' roller skating rink accompanied by his wife and two little children. He skated around the rink several times with his seven-year old daughter and with his young son. ". . . the pattern was just the general flow of the traffic." In the inner perimeter were advanced skaters who were spinning and figure skating. Sometimes the skaters skated singly, sometimes two, three or four abreast. On the side of the rink were benches where the prospective skaters put on their skates and parents waited for their children.

Plaintiff had skated ever since he was a youth. He testified that as he was skating a two-step with his

seven-year-old daughter in the normal flow of traffic which was counterclockwise, he noticed a small boy named Smith who was skating toward the bench to rejoin his mother. "When the boy was about 25 feet away, he seemed to be coming at me in a groping sort of way, as if he was struggling to maintain balance, apparently he wasn't able to stand on his skates. Well, I was on the inside with my daughter on the outside and I just had time enough to try to jump and avoid running into the boy. I did it more by instinct than anything and as I jumped my skate made contact with him. And the next thing I knew I was on the floor. . . ."

As plaintiff skated round and round the rink he naturally noticed "that most of the skaters were of an age between five and say twelve years of age . . . Well, he [the boy who appeared to plaintiff to be between five and seven] was coming almost directly at me; he was coming on a slant, angle, of course I was coming in this direction, here, as I say, he appeared to be stumbling and pitching forward as if trying to maintain balance. This motion is quite common with all small children trying to go on skates and it was apparent that he was going to fall right in front of me . . . When I made contact with him, I couldn't say that he was actually already on the floor, but he was in the process of going down." Plaintiff fell and fractured his ankle in three places.

This was plaintiff's case.

Defendants' witnesses testified that plaintiff had been skating backwards several times during the evening, which he admitted, and had been warned that his conduct might result in injury to himself and others; and more importantly, that at the time he fell he was skating backwards and, because of this, fell over the child whom he could not or did not see.

Defendants also presented evidence that the rink was well supervised by their employees.

In spite of the aforesaid evidence, the jury returned a verdict in favor of the plaintiff for $12,000 and, we repeat, the lower Court refused to grant a new trial.

The pertinent principles of law may be thus summarized:

(1) In order to recover, a plaintiff must prove by a fair preponderance of the evidence that the defendant was negligent, and that his negligence was the proximate cause of the accident: *Steiner v. Pittsburgh Rwys. Co.,* 415 Pa. 549, 204 A. 2d 254; *Markle v. Robert Hall Clothes,* 411 Pa. 282, 191 A. 2d 374.

(2) Moreover, the mere happening of an accident or an injury does not establish negligence nor raise an inference or a presumption of negligence nor make out a prima facie case of negligence: *Steiner v. Pittsburgh Rwys. Co.,* 415 Pa., supra; *Flagiello v. Crilly,* 409 Pa. 389, 187 A. 2d 289.

(3) A jury's verdict which is based on mere conjecture or guess will not be sustained: *Flagiello v. Crilly,* 409 Pa., supra; *Schofield v. King,* 388 Pa. 132, 130 A. 2d 93.

(4) Furthermore, an owner or lessee who maintains a place of amusement for which admission is charged *is not an insurer,*[*] but is liable only for lack of reasonable care in the construction, maintenance, and management of it, considering the kind and character of the amusement or exhibitions given and the customary conduct of the paying patrons: *Wood v. Con-*

---

[*] Every player in and every spectator at a baseball game, a football game, a basketball or soccer or hockey game, or in or at an automobile race, knows that an accident or injury may occur in these and in many other sports, and that by playing or watching he voluntarily assumes the risk of injury. For us to allow recovery under the facts in this case would be tantamount to a decision (a) that the owner or lessee of the premises where any of these sports are played is an insurer of the safety of every player and every spectator under any and all circumstances, and (b) that there is no such thing as a voluntary assumption of risk.

*neaut Lake Pk., Inc.,* 417 Pa. 58, 61, 209 A. 2d 268; *Haugh v. Harris Bros. Amusement Co.,* 315 Pa. 90, 172 Atl. 145; *Schentzel v. Philadelphia National League Club,* 173 Pa. Superior Ct. 179, 96 A. 2d 181. Cf. *Cooper v. Pittsburgh,* 390 Pa. 534, 136 A. 2d 463. Plaintiff produced no evidence of the lack of reasonable care on the part of defendant.

(5) It is crystal clear (a) that plaintiff undoubtedly should have been, and actually was, aware of the risks that he and every other skater took when he skated that night in a rink filled with young children skating, and (b) that he voluntarily assumed the risk of collision and injury.

(6) An appellate Court will reverse an Order granting or refusing a new trial only when there has been a clear abuse of discretion or an error of law which controlled the outcome of the case: *Trimble v. Merloe,* 413 Pa. 408, 197 A. 2d 457; *DeMichiei v. Holfelder,* 410 Pa. 483, 189 A. 2d 882.

For each and all of these reasons, it is impossible to sustain the Order of the lower Court which clearly abused its discretion when it dismissed defendants' motions for a new trial.

Judgments reversed and new trial granted.

Mr. Justice JONES, Mr. Justice EAGEN and Mr. Justice ROBERTS concur in the result.

Mr. Justice MUSMANNO dissents.