592 A.2d 1324

**Luanne MILLER**

v.

**PETER J. SCHMITT & CO., INC., t/d/b/a Loblaws, Edward Edinger and Mary L. Edinger, Individually, and t/d/b/a Edinger Super Ice Service.**

**Appeal of PETER J. SCHMITT & CO., INC., t/d/b/a Loblaws.**

Superior Court of Pennsylvania.

Argued Oct. 17, 1990.

Filed June 17, 1991.

Anthony J. Williott, Pittsburgh, for appellant.

T. Warren Jones, Erie, for Edinger, appellee.

Lawrence M. Kelly, Ellwood City, for Miller, appellee.

Before ROWLEY, WIEAND and FORD ELLIOTT, JJ.

ROWLEY, Judge:

On July 19, 1984, while shopping in a supermarket owned and operated by appellant Peter J. Schmitt & Co., t/d/b/a Loblaws (Loblaws), appellee Luanne Miller slipped and fell in front of an ice machine that had been stocked minutes earlier by appellee Edward Edinger, an independent contractor who regularly delivered ice to the machine. To recover for injuries sustained in the fall, Miller brought an action against Loblaws and Edward and Mary Edinger, individually, and t/d/b/a Edinger Super Ice Service (Edinger). A jury awarded damages to Miller in the amount of $35,000.00 and apportioned causal negligence as follows: Miller, 25%; Loblaws, 45%; and Edinger, 30%.[1] Following the denial of post-trial motions and the award of delay damages, a judgment was entered against Loblaws in the amount of $19,035.13 and against Edinger in the amount of $12,266.01.

In this timely appeal from the judgment, Loblaws contends that 1) because the evidence at trial was not sufficient under Pennsylvania law to sustain a verdict against Loblaws, Loblaws is entitled to judgment notwithstanding the verdict; or, alternatively, 2) Loblaws is entitled to a new trial as a result of one or more errors made by the court during the course of the trial. In addition, Loblaws argues that the trial court erred in failing to order Edinger to indemnify Loblaws. For the reasons set forth below, we conclude that the remedy of judgment notwithstanding the verdict is not warranted but that the admission of evidence of a post-accident remedial measure requires that we vacate the judgment and remand the case for a new trial.

## I. LOBLAWS' REQUEST FOR JUDGMENT N.O.V.

"The entry of judgment notwithstanding a jury verdict to the contrary is a drastic remedy" which will be granted "only if 'no two reasonable persons could fail to agree that

1. Although Mary Edinger was named as a defendant, she was not involved in the events at issue and the trial court instructed the jury to disregard her.

the verdict is improper.' " *Niles v. Fall Creek Hunting Club, Inc.*, 376 Pa.Super. 260, 264–65, 545 A.2d 926, 928–29 (1988) [quoting *Neal by Neal v. Lu,* 365 Pa.Super. 464, 478, 530 A.2d 103, 110 (1987), (quoting *Northwest Savings Association v. Distler,* 354 Pa.Super. 187, 191, 511 A.2d 824, 825 (1986))]. In reviewing a motion for judgment n.o.v., we consider all of the evidence actually received and all reasonable inferences therefrom in the light most favorable to the verdict winner. *Id.,* 376 Pa.Super. at 264–65, 545 A.2d at 929. Mindful of our scope of review, we turn to the facts of the case before us.

Edinger Super Ice Service, owned and operated by Edward L. Edinger, Sr., was under contract to deliver ice to Loblaws, the supermarket where the accident occurred. Mr. Edinger had been delivering ice to Loblaws for at least a year. When ice was needed, Loblaws would call Mr. Edinger; thus, Loblaws always knew when Mr. Edinger was going to make a delivery. During 1984 Mr. Edinger delivered ice to the store at least weekly and sometimes more frequently. These deliveries involved an average of several hundred bags of ice per week. The ice cubes had been packaged by Mr. Edinger in plastic bags with a tie or seal at the top.

The usual procedure when making a delivery at the store was for Mr. Edinger to back his truck up to the loading dock at the rear of the store and then ring a bell, which would summon a store employee to admit him into the store and to take an inventory of the ice being delivered. Mr. Edinger would then load the bags of ice onto a cart. When one of the store's carts was available, he would use it; otherwise he would use his own open cart. Knowing that condensation or leakage from the bags of ice could drip onto the floor, he preferred to use one of Loblaws' carts in this particular store because if water dripped onto the tile floor, which was regularly buffed to a high gloss, it would be "an accident waiting to happen" (N.T. at 174).

After the ice had been loaded onto a cart, Mr. Edinger would take it to the ice machine, which was located in the

front of the store, a distance of approximately half a block from the receiving area in the back, or to one or more of several other locations in the store where ice was used. When doing so he normally carried a mop on the cart because of the possibility of spillage or leakage. Loblaws did not provide an employee to assist him in loading the ice machine. Although Loblaws had placed rugs in the produce area and at the front entrance because of the possibility of wet floors in those areas, there was no rug in front of the ice machine, which was located in a high-traffic area.

On July 19, 1984, the day of Ms. Miller's accident, the weather was hot and sunny, with a temperature of approximately ninety degrees. Responding to a call from Loblaws, Mr. Edinger was admitted by Alois Stuczynski, the co-manager of the store. Mr. Edinger unloaded ice in the receiving area, which was not air conditioned.[2] Because no Loblaws cart was available, he used his own cart to transport approximately twelve bags of ice to the ice machine at the front of the store. On the way to the ice machine he said hello to Earl Rosenquist, the store manager. After Mr. Edinger had placed the ice in the machine, he returned to the back of the store without mopping the floor; he was unable to remember whether he had had a mop on the cart at that time.

Within minutes of the delivery of ice, Ms. Miller slipped and fell on a "surface wetness" (N.T. at 57) located approximately three to five feet in front of the ice machine. She had not seen any water on the floor before she fell. After the accident she was assisted by the store manager, who told her "that probably the ice company had just been there and probably they had left the water on the floor" (N.T. at 60). The co-manager of the store examined the floor and saw two trails of water drops, "one heading to the freezer

2. Mr. Stuczynski testified that the receiving dock was air conditioned, although "the back room warmed up somewhat" (N.T. at 227) because the doors to the outside were opened and closed when deliveries were made; Mr. Edinger testified that the receiving area was not air conditioned. We are constrained by our standard of review to accept Mr. Edinger's testimony on this point.

and the other back out to the store area" (N.T. at 222). Mr. Rosenquist, the store manager, prepared an accident report indicating that the floor was wet from the ice company filling the machine and listing as a step taken to prevent a recurrence, "Forbid Edinger Ice Company to carry ice in open carts" (N.T. at 208). As a result of Ms. Miller's accident a rug was placed in front of the ice machine.

Loblaws contends that the "extreme remedy" of judgment notwithstanding the verdict is warranted because neither § 343 of the Restatement (Second) of Torts, which Loblaws considers to be controlling, nor § 344, which appellees consider to be controlling, provides a basis for holding Loblaws liable for appellee's injury. According to Loblaws, the crucial issue under either section of the Restatement is whether "Loblaws act[ed] reasonably to discover any dangerous conditions on its premises?" (Brief for Appellant at 19). Contending that it exercised reasonable care, Loblaws points to the undisputed fact that at no time before July 19, 1984, had there been a similar situation involving Edinger. Therefore, Loblaws argues, since Loblaws did not cause or contribute to, did not have actual or constructive notice of, and could not have foreseen the accident, there is no basis on which to hold Loblaws liable for Ms. Miller's injuries.

With respect to § 344 of the Restatement (Second) of Torts, we disagree.[3] Section 344 reads as follows:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for

3. In a section of its argument dealing with another issue, appellant states that "Loblaws was prejudiced by the failure to instruct the jury fairly and entirely on Restatement § 343, inasmuch as it is the only possible basis on which Loblaws could be found liable, given the Trial Court's failure to instruct the jury on Restatement § 344" (Brief for Appellant at 25). Appellant has not raised and argued the latter claim as a separate issue, however. In addition, appellant maintains that "the standard under Restatement § 344 is no different than the one under Restatement § 343" (Brief for Appellant at 20) and states, in attempting to distinguish a case cited by appellee Edinger in connection with another issue, that the cited case "was not a case under Restatement of Torts § 344, as is the instant case" (Appellant's Reply Brief to Appellee Edinger at 8).

such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

Comment f to § 344, which addresses the issue of foreseeability, serves to limit the landowner's liability:

**f. Duty to police premises.** Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

However, as the trial court noted in its opinion denying Loblaws' motion for judgment n.o.v., comment c to § 344 controls the issue before us. Comment c reads as follows:

**c. Independent contractors and concessionaires.** The rule stated applies to the acts of independent contractors and concessionaires who are employed or permitted to carry on activities upon the land. *The possessor is required to exercise reasonable care, for the protection of the public who enter, to supervise the activities of the contractor or concessionaire, including* the original installation of his appliances and their operation, and *his methods.*

(Emphasis added.)   In *Smith v. Lit Brothers*, 174 Pa.Super. 102, 100 A.2d 390 (1953), this Court, quoting § 344 of the first Restatement of Torts, held that it is the duty of a storekeeper "to exercise a reasonably careful supervision of the appliances or methods of an independent contractor ... whom he has employed or permitted to carry on upon the land an activity which is directly or indirectly connected with his business use thereof." *Id.*, 174 Pa.Superior Ct. at 105, 100 A.2d at 392.   Dependant/appellant Lit Brothers, a department store, had engaged an independent contractor to install an escalator from the third to the fourth floors but had not posted warning signs or installed protective devices to catch falling debris.   Concluding that insufficient precautions had been taken to protect customers from the foreseeable hazards of the construction work, this Court affirmed the judgment obtained against Lit Brothers by a store patron who had been injured by falling glass.

In *Glass v. Freeman*, 430 Pa. 21, 240 A.2d 825 (1968), our Supreme Court, citing comment c to § 344 of the Restatement (Second) of Torts as well as this Court's opinion in *Smith v. Lit Brothers*, observed that

> [o]ne aspect of [the] duty [of a possessor of land to business invitees] is that the possessor of land must exercise a reasonably careful supervision of the appliances and methods of an independent contractor whom he has employed or permitted to carry on upon the land an activity directly or indirectly connected with the business use thereof.

*Id.*, 430 Pa. at 29, 240 A.2d at 829.   The Freemans, defendants/appellants, had engaged a number of persons, including plaintiff/appellee Glass, to blacktop a parking lot next to the tavern they owned and operated.   The Freemans' son-in-law operated a tractor and left it running.   His seven-year-old son climbed onto the tractor and attempted to drive it, with the result that the tractor went out of control and severely injured Glass.   This Court held that the jury could reasonably have found that the Freemans had breached their duty to Glass under either § 318 (duty of possessor of

land or chattels to control conduct of licensee) or § 344 of the Restatement (Second) of Torts.

Loblaws distinguishes the cases just cited from the present case by pointing out that *Smith v. Lit Brothers* involved an inherently dangerous activity, while in *Glass v. Freeman* it was foreseeable that an unsupervised young child at a construction site would act to cause injury. However, while these cases are factually distinguishable from the case before us, the principle cited in those cases is nevertheless applicable to the facts of the present case. Loblaws knew that Mr. Edinger, an independent contractor, would be delivering ice on a very hot day; that he would unload it in an area that was not air conditioned; that he was likely to use an open cart to transport it a distance of half a block to an ice machine located in a very busy part of the store; that he usually carried a mop on his cart because of the possibility that water would drip onto the floor; and that there was no rug, warning sign, or other precaution in the area of the ice machine. Loblaws contends that it "could not have reasonably foreseen that Edinger would both spill the water and fail to clean it up" (Brief for Appellant at 18). Whether, given the facts just noted, Loblaws' reliance on Edinger's performance record constitutes "reasonably careful supervision" of his methods is a question of fact for the jury. Accordingly, we deny Loblaws' request for the entry of judgment n.o.v.

## II. LOBLAWS' REQUEST FOR A NEW TRIAL

Loblaws raises several claims of trial court error, and our review reveals that at least one of them—the claim that it was error to admit evidence of Loblaws' placement of a mat in front of the ice machine after the accident occurred—warrants the award of a new trial. Appellees concede that evidence of a subsequent repair is not admissible to impute antecedent negligence, *O'Malley v. Peerless Petroleum, Inc.*, 283 Pa.Super. 272, 289, 423 A.2d 1251, 1260 (1980), but they contend that the evidence was relevant to show the feasibility of a protective measure, that the burden was

upon Loblaws to request jury instructions limiting consideration of the evidence to the question of feasibility, that Loblaws "opened the door" by questioning witnesses concerning subsequent changes in procedure and the lack of a mat in front of the ice machine, and/or that Loblaws has waived this claim by failing to object to the testimony at issue.

■ The last of these contentions is easily disposed of. Before trial Loblaws filed a motion *in limine* asking the court to preclude 1) expert testimony as to the desirability of a mat and 2) "any testimony, comment or remark about a rug being placed in front of the ice machine following the accident, inasmuch as evidence of subsequent remedial measures is not admissible under well-established principles of Pennsylvania law." The trial court granted the first of these requests but denied the second.[4] Where a motion *in limine* has been argued and denied before trial, it is unnecessary for the movant's counsel to renew his or her objection during trial. *Commonwealth v. Gibson,* 363 Pa.Super. 466, 468, 526 A.2d 438, 439 (1987). Therefore, we conclude that Loblaws has not waived its challenge to the evidence in question.

Similarly, we do not accept appellees' contention that Loblaws was required to request jury instructions limiting consideration of the evidence to the question of feasibility. As authority for the claim, Loblaws cites *O'Malley v. Peerless Petroleum, supra.* In that case the appellant conceded that evidence of subsequent repairs was admissible for purposes other than the imputation of antecedent negligence but argued that the jury should have been given limiting instructions on the matter. This Court held that because the appellant had neither proposed limiting instructions nor objected to the jury charge as given, the appellant had failed to preserve the issue for appellate review. *Id.,*

4. Although the Honorable James B. Dwyer noted "April 10, 1989 motion granted" on the motion *in limine,* the discussion between Loblaws' counsel and Judge Dwyer, referred to at a later point in this opinion, makes clear that the motion was granted in part and denied in part.

283 Pa.Super. at 289, 423 A.2d at 1260. Because *O'Malley v. Peerless Petroleum*, unlike the present case, did not involve the trial court's denial of a pretrial motion *in limine*, the effect of which was to admit the evidence in question, it is not controlling in the case before us.

Our review of the record indicates that this matter was first touched upon by counsel for Ms. Miller, who asked Mr. Edinger if there was a rug in front of the ice machine on the day in question.[5] Mr. Edinger replied that there was not. He was later asked by his own counsel whether Loblaws had ever placed a rug in front of the ice machine, asked him whether they should do so, or asked him to do so. He replied that they had not. When asked by counsel for Loblaws whether he had ever suggested to anyone at the store that there should be a rug in front of the ice machine, Mr. Edinger answered that "[w]hen I can find a rug, I put a rug in front of the machine" (N.T. at 175) but that he had not done so in this store and had not suggested to anyone at the store that such an action should be taken.

Mr. Edinger's testimony was followed by that of Earl Rosenquist, the store manager, who was questioned by Loblaws' counsel as follows:

Q: Has anything changed about the way [Mr. Edinger] makes his deliveries since [Ms. Miller's] accident, as far as his deliveries are concerned?

A: To tell the you [sic] the truth, I'm not sure.

Q: Now, you've heard testimony about rugs and things such as that earlier in this case, you have been in the courtroom for that testimony, haven't you?

A: Yes, sir.

Q: The testimony is that there was no rug in front of this particular ice machine, is that true?

A: Yes.

Q: Did you have rugs in other areas of your store?

5. By this statement we do not mean to imply that counsel for Ms. Miller "opened the door" to questions concerning the post-accident placement of a rug in front of the ice machine.

A: Yes, sir.

.     .     .     .     .

Q: What about the rug or a mat—strike that. What determines whether or not a rug or a mat should be put down?

A: If there's a problem or a potential problem in the store.

.     .     .     .     .     .

Q: Is it your testimony where you've had prior knowledge of liquid or something else on the floor frequently, you would put down a rug?

A: Yes, sir, for sure.

Q: And is it your testimony that there was no prior problem with this ice machine?

A: No.

Q: Earl, the rugs themselves, can they be a tripping hazard or a falling hazard?

A: Yes.

Q: Why is that?

A: We don't like to use them unless you have to because you can turn a cart sideways, you can make a rug pop up, that can cause a problem.

Q: ... [W]ould there be a problem with a rug in this particular area?

A: Yes.

Q: What is that problem?

A: Coming down the aisle, if you make a right turn and turn the cart, you could definitely twist the rug and that could cause problems.

Q: In other words, you wouldn't put a rug there unless you had to, is that true?

A: Right.

Q: Now, are there other products in your store that sweat or condensate on the outside?

A: Lots of products.

.     .     .     .     .

Q: Did you put rugs in those areas?

A: No, sir.

Q: Why is that?

A: You'd have rugs everywhere and possibly other problems if you had rugs.

Q: Customers don't want rugs everywhere, do they?

A: It's unsightly, plus pushing carts up and down on rugs isn't nice either, it could cause problems.

N.T. at 192–95. Counsel for appellee Edinger cross-examined Mr. Rosenquist as follows:

Q: Now, during [Loblaws' counsel's] examination of you, he asked the question, have there been any changes in the delivery procedure, I'm talking about ice delivery here?

A: Okay.

Q: Since the time of this accident?

A: Uh-huh.

Q: What was your answer to that?

A: I didn't think so, I don't know to tell you the truth....

Q: Is the ice machine in the same location?

A: No.

Q: You aren't by any chance using mats or carpets now, are you?

A: No.

Q: In front of the ice machine?

A: Right now, no.

N.T. at 206. Mr. Rosenquist's testimony was clarified when he was questioned by plaintiff's counsel as follows:

Q: Mr. Rosenquist, isn't it true that after this fall of July 19, 1984, that a carpet was placed, a rug was placed in front of the ice machine?

A: Yes, that's true. The ice machine now he asked me. It's not where it's been, it's been in three places since then.

Q: And you moved it since then?

A: Yes.

Q: There was a change in the procedure followed by Mr. Edinger?

A: Wasn't Mr. Edinger's procedure. The only reason the rug was put there, it looked like there might have been a potential problem.

N.T. at 207. Finally, counsel for Loblaws asked the following questions on redirect:

Q: The rug that was placed in front of the ice machine following Luanne Miller's accident, was that directly because of her accident?

A: Yes.

Q: And was that the same as in the other areas of your store, that you put a rug down where you knew you had a problem?

A: Yes, sir.

N.T. at 212.

It is important to remember that all of this questioning took place *after* the trial court had ruled that evidence of the post-accident use of a rug would be admissible. At the start of the trial, counsel for Loblaws, referring to an earlier discussion in the judge's chambers concerning the motion *in limine*, stated that "with respect to evidence that Loblaws later on did put a mat or rug in front of the ice machine ... I believe the court's ruling was it would not preclude that testimony" (N.T. at 5). The court replied, "That's right, concerning the fact Loblaws did place the rug later on, that will not be barred from the evidence, *that will be proper evidence* " (N.T. at 5; emphasis added).

Because counsel for Loblaws was forced by this pretrial ruling to anticipate the eventual admission of the evidence to which he objected, we do not find that his own questioning "opened the door" to the admission of such evidence. Nor, given this record, do we conclude that the testimony concerning the post-accident use of a mat was admissible as evidence of the feasibility of a protective measure. The court's pretrial ruling did not so limit the admissibility of the evidence, and it was not known prior to

trial whether the feasibility of using a rug to protect against slippery floors would in fact be called into question.

██ In its opinion the trial court suggests that the policy considerations which normally bar the admission of post-accident remedial measures do not apply in the present case because, as the court interprets Mr. Rosenquist's testimony, by the time a rug was placed in front of the ice machine, the machine was no longer located where it had been when the accident occurred. Although Mr. Rosenquist's testimony is not entirely clear on this point, it is just as reasonable to infer from his testimony that a rug was placed in front of the machine immediately after the accident occurred and before the machine was moved to another location. Given the importance in this case of Loblaws' efforts, or lack thereof, to cope with the possible effects of Edinger's delivery of ice, we hold that the pretrial admission of a post-accident remedial measure was error which warrants a new trial.

Loblaws also contends that the trial court erred in admitting evidence that a person was assigned to accompany Edinger during his deliveries at another Loblaws store and in improperly instructing the jury with respect to a landowner's duties. In addition, Loblaws argues that the trial court erred in failing to instruct Edinger to indemnify Loblaws. Because the alleged errors during the course of trial may not arise on retrial, we decline to address them in this appeal, and the grant of a new trial makes it unnecessary to consider the issue of indemnification.

Judgment vacated; case remanded for a new trial; jurisdiction relinquished.

WIEAND and FORD ELLIOTT, JJ., files concurring and dissenting opinions.

WIEAND, Judge, concurring and dissenting:

I concur in the decision finding trial error which requires the granting of a new trial. However, I would go further and would cause judgment n.o.v. to be entered in favor of

Loblaws. There is in the record of this case no evidence that the store was guilty of negligence which contributed to Luanne Miller's fall.

On July 19, 1984, Miller slipped and fell because of water which had fallen on the floor of a Loblaws grocery store while an ice machine on the store premises was being stocked by Edinger Super Ice Service. To recover for injuries sustained in the fall she commenced an action against Peter J. Schmitt & Co., t/d/b/a Loblaws (Loblaws), and Edward and Mary Edinger, t/d/b/a Edinger Super Ice Service (Edinger), an independent contractor who regularly delivered packages of ice and placed them in a self-service machine. The action was tried before a jury which found that the plaintiff had sustained damages in the amount of thirty-five thousand ($35,000) dollars and apportioned causal negligence as follows: plaintiff—25%; Loblaws—45%; and Edinger—30%. Post-trial motions were denied, delay damages were added, and a judgment was entered against Loblaws in the amount of nineteen thousand, thirty-five and $^{13}/_{100}$ ($19,035.13) dollars and against Edinger in the amount of twelve thousand, two hundred sixty-six and $^{1}/_{100}$ ($12,266.01) dollars.

The evidence established that the plaintiff-appellee had slipped and fallen because of water which was present on the floor in front of a self-service ice machine. The only evidence concerning the source of the water was that it had fallen to the floor moments before the accident while Edward Edinger was restocking the machine with plastic bags of ice cubes. Edinger testified that he had transferred ice from a refrigerated truck to an open mesh cart which he had wheeled to the ice machine in the front part of the store. After emptying the cart, Edinger had returned to the receiving area of the store to get a second load of ice. It was during this period that the plaintiff encountered water on the floor and fell.

The law in Pennsylvania regarding a landowner's liability to business invitees is stated in the Restatement (Second) of Torts, § 343, as follows:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

In *Moultrey v. Great A & P Tea Co.*, 281 Pa.Super. 525, 422 A.2d 593 (1980), the court applied this principle in a case in which a customer had fallen on fruit lying in the produce aisle of a grocery store. The court described the plaintiff's burden of proof under § 343 as follows:

The principle of law from which this rule of the Restatement was derived is that a possessor of land is not an insurer of the safety of those on his premises. *E.g., Martino [v. Great A & P Tea Co.]*, 419 Pa. [229] at 233, 213 A.2d [608] at 610; *Winkler v. Seven Springs Farm, Inc.*, 240 Pa.Super. [641] at 646, 359 A.2d [440] at 442. As such, the mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition is neither, in and of itself, evidence of a breach of the proprietor's duty of care to his invitees, nor raises a presumption of negligence. *E.g., Amon v. Shemaka*, 419 Pa. 314, 317, 214 A.2d 238, 239 (1965); *Calhoun v. Jersey Shore Hosp.*, 250 Pa.Super. 567, 571, 378 A.2d 1294, 1296 (1977); *Jones v. Sanitary Mkt. Co.*, 185 Pa.Super. 163, 165–66, 137 A.2d 859, 860–61 (1958). Therefore, in order to impose liability on a possessor of land, the invitee must present other evidence which tends to prove that the possessor deviated in some particular [sic] from his duty of reasonable care under the existing circumstances. Logically, the invitees case-in-chief must consist of evidence which tends to prove either that the proprietor knew, or in the exercise of reasonable

care ought to have known, of the existence of the harm-causing condition. *See, e.g., Martino,* 419 Pa. at 233, 213 A.2d at 610; *Katz v. John Wanamaker, Inc.,* 381 Pa. 477, 482, 112 A.2d 65, 67 (1955); *Markman v. Fred P. Bell Stores Co.,* 285 Pa. 378, 382, 132 A. 178, 180 (1926); *McMillan v. Mountain Laurel Racing, Inc.,* 240 Pa.Super. [248] at 254–59, 367 A.2d [1106] at 1109–11; *Winkler v. Seven Springs Farm, Inc.,* 240 Pa.Super. at 646, 359 A.2d at 442; *Borsa v. Great Atl. & Pac. Tea Co.,* 207 Pa.Super. 63, 68, 215 A.2d 289, 292 (1965); *Jones v. Sanitary Mkt. Co.,* 185 Pa.Super. at 166–76, 137 A.2d at 861.

In construing this portion of the Restatement, Pennsylvania courts have uniformly held that if the harmful transitory condition is traceable to the possessor or his agent's acts, (that is, a condition created by the possessor or those under his authority), then the plaintiff need not prove any notice in order to hold the possessor accountable for the resulting harm. *See, e.g., Penn v. Isaly Dairy Co.,* 413 Pa. 548, 198 A.2d 322, 324 (1964); *Finney v. G.C. Murphy Co.,* 406 Pa. 555, 178 A.2d 719 (1962). In a related context, where the condition is one which the owner knows has frequently recurred, the jury may properly find that the owner had actual notice of the condition, thereby obviating additional proof by the invitee that the owner had constructive notice of it. *See, e.g., Borsa v. Great Atl. & Pac. Tea Co.,* 207 Pa.Super. at 68, 215 A.2d at 292; *Clark v. Glosser Bros. Dept. Stores,* 156 Pa.Super. 193, 39 A.2d 733 (1944). *Where, however, the evidence indicates that the transitory condition is traceable to persons other than those for whom the owner is, strictly speaking, ordinarily accountable, the jury may not consider the owner's ultimate liability in the absence of other evidence which tends to prove that the owner had actual notice of the condition or that the condition existed for such a length of time that in the exercise of reasonable care the owner should have known of it. E.g., Katz v. John Wanamaker, Inc.,* 381

Pa. at 482, 112 A.2d at 67–68; *Parker v. McCrory Stores*, 376 Pa. 122, 101 A.2d 377 (1954); *Sheridan v. Horn & Hardart*, 366 Pa. 485, 77 A.2d 362 (1951); *Borsa v. Great Atl. & Pac. Tea Co.*, 207 Pa.Super. at 68, 215 A.2d at 292; *Potter v. Glosser Bros. Dept. Stores*, 146 Pa.Super. 129, 130–31, 22 A.2d 28, 29 (1941).

*Id.*, 281 Pa.Superior Ct. at 529–531, 422 A.2d at 595–596 (emphasis added).

The record in the instant case contains no evidence that Loblaws knew or should have known that water was on the floor in front of the ice machine. The water had been allowed to fall to the floor by Edinger, who was not an employee of Loblaws but an independent contractor for whose conduct Loblaws was not accountable. The hazard created by the water, moreover, had not been in existence for such a period of time that Loblaws, in the exercise of reasonable care, should have known of the condition and corrected it. Indeed, Edinger was still engaged in stocking the ice machine when the fall occurred. There also was no evidence that water had ever accumulated on the floor on prior occasions when Edinger had delivered bags of ice to the store and placed them in the vending machine. Rather, the testimony showed that during the several years in which Edinger had been stocking the machine, there never had been a problem with water on the floor. Thus, it cannot be said that the presence of water was a frequently recurring condition.

Negligence on the part of a grocery store cannot be established by showing the mere presence of water or refuse on the floor, for such a condition may arise temporarily in any grocery store even though the proprietor has exercised the utmost care. *Moultrey v. Great A & P Tea Co., supra.* I would conclude, therefore, that plaintiff's failure to prove that appellant had actual or constructive notice of the water precluded a finding of negligence under § 343 of the Restatement (Second) of Torts.

Appellees argue that it was a hot summer day and that Loblaws should have anticipated (1) that ice would melt and (2) that water would leak from the plastic bags in which the

ice had been packaged by Edinger. They argue, therefore, that a jury could find Loblaws negligent pursuant to Section 344 of the Restatement (Second) of Torts. This section provides as follows:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

The limited scope of this principle, however, is acknowledged by the language of comment f as follows:

f. **Duty to police premises.** Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

Restatement (Second) of Torts, § 344 comment f.

Loblaws was not under a duty to police its premises against unexpected acts by Edinger. The evidence was that a similar condition had never occurred during prior years in which Edinger had been making deliveries of ice to the

store. There was no contrary evidence. Thus, there is no evidentiary support for a finding that Edinger, on this occasion, was likely to create a dangerous condition by allowing water to leak or drip from the packages of ice which he was transporting to the ice machine. Without any reason to believe that such a condition might be created, Loblaws had no duty to give warning in advance that such a condition might be present. A grocery store's liability to a customer under this section of the Restatement is not established by showing that ordinary ambient conditions might cause ice to melt. The fact that it was a hot day did not alone require the store to anticipate that Edinger's delivery of packages of ice would cause a condition dangerous to other invitees. Compare: *Moran v. Valley Forge Drive-In Theater, Inc.*, 431 Pa. 432, 246 A.2d 875 (1968) (theater liable for injuries caused by inherently dangerous delinquent acts of third persons where evidence showed history of delinquent acts on the premises); *Glass v. Freeman*, 430 Pa. 21, 240 A.2d 825 (1968) (property owner liable where it was foreseeable that unsupervised young child at construction site would act to cause injury); *Smith v. Lit Brothers*, 174 Pa.Super. 102, 100 A.2d 390 (1953) (department store liable for injuries to customer where store failed to inspect, discover and remedy unsafe procedure by independent contractor engaged in inherently dangerous demolition work). Section 344 of the Restatement should not be construed to impose upon grocery store owners the duty of anticipating every possible hazard which may arise on their premises by virtue of acts committed by third persons. Only where the store owner has failed to exercise reasonable care to protect his invitees against conduct which, from past experience, he should have anticipated will liability arise. A self-service grocery store hosts a steady stream of customers, many of whom may, at one time or another, accidentally create a potential hazard by dropping, dripping or spilling something on the floor. To require a grocery store to provide supervision of every third person who might create such a hazard would in effect make the store

the insurer of its customers' safety. This is not and never has been the law.

Comment c to Section 344 of the Restatement, upon which the trial court relied, describes a store owner's duty to exercise reasonable care to supervise the activities of independent contractors. This duty of supervision was not present under the facts of the instant case. The duty described in comment c would have had application if Edinger had never before delivered ice and on a hot day Loblaws had made no effort to ascertain whether proper precautions were being taken to protect against melting and spillage. Here, however, Loblaws was familiar with Edinger's procedures, and these procedures had proved entirely safe in the past. The law did not require strict supervision under these circumstances.

I would reverse the judgment entered in the trial court, and grant judgment n.o.v. in favor of the appellant.

FORD ELLIOTT, Judge, concurring and dissenting:

I concur with Judge Rowley's resolution of the issue involving Comment c to § 344 of the Restatement (Second) of Torts. However, I respectfully dissent from the majority's grant of a new trial based upon its conclusion that the trial court erred in admitting evidence of a post-accident remedial measure.

I can find no error in the trial court's resolution of this issue for the following reasons: (1) Loblaws "opened the door" to the introduction of the use of a carpet, a *post-accident* remedial measure; and (2) Loblaws effectively waived any objection on appeal based on its failure to request limiting instructions.

Appellee, Miller, was not the first to broach the subject of Loblaws' use of a carpet as a subsequent remedial measure. Counsel for Miller pursued a line of questioning directed to establishing that carpets, among other precautionary measures, could have been utilized by Loblaws at little cost to prevent the kind of accident which occurred. During ques-

tioning of Mr. Edinger, counsel for Miller asked if there was a rug in front of the ice machine *on the day in question.* Such questioning is not improper, and it does not suggest that Loblaws was using a carpet as a subsequent remedial measure.

Mr. Edinger's testimony was followed by that of Earl Rosenquist, the store manager, who was asked the following question by Loblaws' counsel:

Has anything changed about the way [Mr. Edinger] makes his deliveries since [Ms. Miller's] accident, as far as his deliveries are concerned?

With this question, counsel for Loblaws "opened the door" for further testimony regarding subsequent remedial measures. What followed were several more questions of Mr. Rosenquist, by counsel for Loblaws pertaining to the feasibility of rugs or mats as precautionary measures.

When counsel for appellee Edinger cross-examined Mr. Rosenquist, he asked if the ice machine was in the same location as it had been at the time of the accident. Mr. Rosenquist replied that it was not. In response to the question of whether Loblaws was now using mats or carpets in front of the machine; Mr. Rosenquist replied that they were not. Counsel for appellee, Miller, then attempted to clarify Mr. Rosenquist's testimony and the following exchange took place:

Q: Mr. Rosenquist, isn't it true that after this fall of July 19, 1984, that a carpet was placed, rug was placed in front of the ice machine?

A: Yes, that's true. The ice machine now he asked me. It's not where it's been, it's been in three places since then.

Q: And you moved it since then?

A: Yes.

Q: There was a change in the procedure followed by Mr. Edinger?

A: Wasn't Mr. Edinger's procedure. The only reason the rug was put there, it looked like there might have been a potential problem.

Such questioning by counsel for Miller was not improper in light of the prior testimony elicited by counsel for Loblaws and Edinger. Further, to preclude counsel for Miller from pursuing this line of questioning would have precluded counsel's ability to impeach the prior incorrect testimony. *See Leghart v. Montour Railroad Co.*, 395 Pa. 469, 150 A.2d 836 (1959).

Even if I were to find that such testimony was prejudicial to Loblaws, I am inclined to find any objection on appeal waived. While, as noted in the Opinion Announcing the Judgment of the Court, evidence of subsequent precautions ordinarily is inadmissible, an exception exists where the evidence is competent for some purpose other than to prove antecedent negligence *See Incollingo v. Ewing*, 444 Pa. 263, 282 A.2d 206 (1971) (evidence of subsequent precautions is admissible to show a caution which was not costly or burdensome to defendant in relation to risk of danger involved and jury was instructed that evidence was admitted for such limited purpose). *In accord* is *Hyndman v. Pennsylvania Railroad Company*, 396 Pa. 190, 152 A.2d 251 (1959), in which evidence that subsequent to an accident involving a child's contact with a transformer tower, the defendant attached signs to the tower reading "Danger, Live Wire, Keep Off" was admitted for the special purpose of demonstrating to the jury one of the precautionary steps which could have been taken by the defendant without hindering its operation. In *Hyndman*, it was held that no prejudice could be said to stem from the admission of this evidence as the jury was instructed adequately that the testimony had no bearing on antecedent negligence, but was only introduced to show a caution which was not costly or burdensome to the defendant in relation to the risk or danger involved. *See also, Leghart v. Montour Railroad Co., supra* (while evidence of subsequent precautions ordinarily is inadmissible, an exception exists where the purpose

of the evidence is to show control or to impeach relevant testimony.)

Based on the foregoing, I cannot find as a matter of law that the trial court erred in denying Loblaws' motion in limine and I agree with the majority that the challenging of the evidence by way of a motion in limine spared Loblaws the necessity of specifically objecting when testimony was elicited at trial. However, I cannot agree that the motion in limine relieved Loblaws from requesting limiting instructions as this court previously has found waiver for a defendant's failure to so request such instructions. *See O'Malley v. Peerless Petroleum, Inc.*, 283 Pa.Super. 272, 288–290, 423 A.2d 1251, 1260 (1980).

In its reply brief at page 7, Loblaws contends that it did submit such a point; however, a review of the Points for Charge contained in the record on appeal does not bear out this allegation.

For the foregoing reasons, I would affirm the judgment below.