J-A09022-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TRACY TRUAX | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| TANYA P. ROULHAC, WILDWOOD 115, INC. AND SILVIO VITIELLO | |
| Appellees | No. 1797 EDA 2013 |

Appeal from the Order Entered June 11, 2013
In the Court of Common Pleas of Monroe County
Civil Division at No(s): 9958 Civil 2010

BEFORE:  BOWES, J., OTT, J., and JENKINS, J.

MEMORANDUM BY OTT, J.:                    **FILED SEPTEMBER 24, 2014**

Tracy Truax appeals from the order entered June 11, 2013, in the Court of Common Pleas of Monroe County, granting summary judgment in favor of defendants, Wildwood 115, Inc. (Wildwood), and Silvio Vitiello (Vitiello).[1]  Truax argues the trial court erred: (1) in determining that Wildwood and Vitiello had, as a matter of law, taken reasonable precautions to prevent injury to patrons walking on the sidewalk next to defendant's property, and (2) in determining Wildwood and Vitiello did not owe a duty to take reasonable measures to protect patrons from the foreseeable risk of a

_____

[1] Roulhac has not been located or served for purposes of this lawsuit. Although the resolution of these motions for summary judgment terminated the cases against Wildwood and Vitiello only, the trial court certified the order as final, as, for all practical purposes, it terminated the entire matter.

vehicle jumping the curb.  After a thorough review of the submissions by the parties, relevant law, and the certified record, we affirm.

We quote the trial court's recitation of the factual history of this matter.

> At all times material hereto, Defendant Silvio Vitiello was the sole owner of a parcel of commercial real estate located off Route 115 in Effort, Pennsylvania.  Defendant Wildwood 115, Inc. was a tenant leasing space from Defendant Vitiello within the premises and doing business as Madd Anthony's Bar and La Roma Pizza.  Pursuant to Defendant Wildwood's lease agreement, it enjoyed nonexclusive use in common of the parking lot of the premises.
>
> On March 4, 2009, at approximately 10:38 p.m., [Truax] and her boyfriend were business invitees of Madd Anthony's Bar. Defendant Tanya Roulhac was operating her van in an intoxicated and drugged condition in Madd Anthony's parking lot. [Truax] was walking south along the sidewalk in front of Madd Anthony's when Defendant Roulhac attempted to pull into a parking space.  Defendant Roulhac's van jumped the concrete parking stop and entered the sidewalk, colliding with [Truax] with such force that her body was flung into the wall of the building.  [Truax] lost consciousness, was airlifted to Lehigh Valley Hospital, and suffered serious leg injuries.  Defendant Roulhac fled the scene of the accident and was later arrested.
>
> The sidewalk on the premises was level with the parking lot and was separated by horizontal concrete parking stops.  [Truax] alleges that these parking stops were inadequate and created a dangerous condition on the premises.  She argues that Defendants[2] were negligent for failing to remedy this dangerous condition, namely by failing to install vertical bollards, curbs,

---

[2] Defendants here means the property and business owners, not the driver, Roulhac.

- 2 -

rails or other safety devices. Defendants, conversely, allege that they satisfied their duty to [Truax] by complying with all applicable building codes and zoning ordinances and that it would be unreasonable and overly burdensome for a jury to overrule experts in determining what kind of safety devices are necessary. Further, Defendants argue that the events that led to [Truax's] injury are so uncommon and extraordinary that it would be oppressive to require Defendants to take steps to prevent such an occurrence. While Defendants filed separate Motions for Summary Judgment, the issues raised in both motions and Defendants' respective arguments in support thereof are nearly identical and will, thus, be addressed together.

Trial Court Opinion, 10/03/2012, at 3-4 (citations to record omitted).

We further note that Truax has agreed that the wheel stops[3] at issue were five inches high. **See** Truax's Brief, at 12.

"[O]ur standard of review of an order granting summary judgment requires us to determine whether the trial court abused its discretion or committed an error of law[,] and our scope of review is plenary." **Petrina v. Allied Glove Corp.**, 46 A.3d 795, 797-798 (Pa. Super. 2012) (citations omitted). "We view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." **Barnes v. Keller**, 62 A.3d 382, 385 (Pa. Super. 2012), *citing* **Erie Ins. Exch. v. Larrimore**, 987 A.2d 732, 736 (Pa. Super. 2009) (citation omitted). "Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered." **Id**. The rule governing summary judgment has been codified at Pennsylvania Rule of Civil Procedure 1035.2, which states as follows.

---

[3] Throughout the certified record, these are referred to as either parking stops or wheel stops. We will refer to them as wheel stops.

**Rule 1035.2. Motion**

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2.

"Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive. *Babb v. Ctr. Cmty. Hosp.*, 47 A.3d 1214, 1223 (Pa. Super. 2012) (citations omitted), *appeal denied,* 65 A.3d 412 (Pa. 2013). Further, "failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law." *Id*.

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a prima facie cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

*Id*. *citing* ***Reeser v. NGK N. Am., Inc.***, 14 A.3d 896, 898 (Pa. Super. 2011), *quoting* ***Jones v. Levin***, 940 A.2d 451, 452-454 (Pa. Super. 2007) (internal citations omitted).

- 4 -

*Cadena v. Latch*, 78 A.3d 636, 638-39 (Pa. Super. 2013).

In this matter, the non-moving party, Truax, bore the burden of proving her allegations of negligence against Vitiello and Wildwood.

> Our Supreme Court has set forth the elements of a cause of action based upon a negligence theory in Pennsylvania as follows:
>
> > (1) a duty or obligation recognized by the law requiring the defendant to conform to a certain standard of conduct for the protection of others against unreasonable risks;
> >
> > (2) defendant's failure to conform to the standard required;
> >
> > (3) a causal connection between the conduct and the resulting injury;
> >
> > (4) actual loss or damage resulting to the plaintiff.

*Keffer v. Bob Nolan's Auto Service, Inc.*, 59 A.3d 621, 638 (Pa. Super. 2012) (citation omitted). Therefore, if Truax has failed to meet any of the four requirements to sustain an action based upon negligence, the case must fail as a matter of law.

Finally, we note,

> A possessor of land is not an insurer of his business invitees, and plaintiff's evidence must establish some degree of negligence on defendant's part in order to recover. *Sloss v. Greenberger*, 396 Pa. 353, 152 A.2d 910 (1959); *Miller v. Hickey*, 368 Pa. 317, 81 A.2d 910 (1951). Furthermore, a jury cannot be permitted to return a verdict based on speculation and not supported by adequate evidence or reasonable inferences. 'We have said many times that the jury may not be permitted to reach its verdict merely on the basis of speculation or conjecture, but that there must be evidence upon which logically

its conclusion may be based.' ***Smith v. Bell Telephone Co.***, 397 Pa. 134, 138, 153 A.2d 477, 479 (1959). Circumstantial evidence is adequate to prove the plaintiff's case and '(i)t is not necessary, under Pennsylvania law, that every fact or circumstance point unerringly to liability . . .' ***Id***. at 138, 153 A.2d at 480, however, the mere happening of an accident is no evidence of negligence and does not raise a presumption of negligence. ***Amon v. Shemaka***, 419 Pa. 314, 214 A.2d 238 (1965).

***Winkler v. Seven Springs Farm, Inc.***, 359 A.2d 440, 442 (Pa. Super. 1976).

There is no dispute that Truax was a business invitee of Madd Anthony's bar, and therefore was owed a duty to exercise reasonable care to protect her from the foreseeable harm caused by a third party. Vitiello and Wildwood have argued they met all appropriate local requirements and their use of five-inch high wheel stops was sufficient to protect pedestrians under known circumstances.[4] Truax, through her expert's report, claims Vitiello and/or Wildwood were required to provide a sidewalk with a five-inch curb and bollards to protect such pedestrians walking on the sidewalk. She attempted to demonstrate the insufficiency of the wheel stops by presenting the expert report of James D'Angelo, P.E.[5] of TEC, Inc.

_____

[4] Neither Vitiello nor Wildwood has provided copies of the relevant local codes or regulations in the certified record. Neither have they provided citations to those codes or regulations.

[5] Professional Engineer.

We analogize the requirements of the instant expert's report to the requirements of an expert's report in a medical negligence action. In medical negligence, the report must relate the standard of care, how the defendant's actions deviated from the standard, and how that deviation led to the harm complained of. *See Rohrer v. Pope*, 918 A.2d 122, 125 (Pa. Super. 2007 (expert report must describe standard of care; establishing duty, breach of duty and causation). If the expert fails to provide the required information, then the report is insufficient as a matter of law. *Id*. *See also Welsh v. Bulger*, 698 A.2d 581, 587-88 (Pa. 1996) (dissenting opinion by Castille, J.) (*citing Mitzelfelt v. Karim*, 584 A.2d 888 (Pa. 1990); *Menarde v. Philadelphia Transportation Co.*, 103 A.2d 681 (Pa. 1954)).

Here, the expert report must describe the relevant engineering standards for the design and construction of a parking lot. It must then show how the parking lot at Madd Anthony's Bar deviated from the standard and how that deviation led to the automobile accident at issue. It is the deviation from the appropriate standards that leads to a finding of negligence. The opinions regarding those elements must be made within a reasonable degree of certainty. *See generally Rauch v. Mike-Mayer*, 783 A.2d 815, 826 (Pa. Super. 2001). We note that it is those required elements that form the basis of the expert's opinion and which allow a jury to base its

determination of negligence. Without these required elements, a jury would be left to speculation, guesswork and conjecture.

Here, accepting everything the expert opined as true, the report still fails to relate the appropriate engineering standards for the design of a parking lot and the use of wheel stops. Accordingly, the expert's report cannot show a deviation from those standards nor demonstrate negligence.[6]

Regarding the parking spaces, D'Angelo opined that the five inch high wheel stops were insufficient to stop vehicles such as SUVs or vans, which have higher ground clearance. He also opined that there should have been a four to six inch high curb to prevent vehicles from driving onto the sidewalk. D'Angelo's report states, in relevant part:

> TEC reviewed the Bardakjy parking layout[7] which is confirmed by the photographs taken after the accident. The parking lot is graded flush to the sidewalk. Standard practice is to have the sidewalk raised above the grade of the lot by 4 to 6 inches. Wheel stops are in place at the spaces facing the building, however, these stops are meant only to reinforce the definition of the end of the parking space. It is evident from damage to the building at the bump out at Madd Anthony's that the wheel stop at this location was not effective in reinforcing the definition

_____

[6] D'Angelo's report also addresses other issues, such as ingress to the parking lot, lighting, and the encroachment of the bar onto the sidewalk. However, as will be discussed, there is no indication of record that any of these issues played any part of the accident. Therefore, these issues are irrelevant to our analysis.

[7] Bardakjy was apparently the person or entity that produced the ground plans for this property.

> of that space. These wheel stops are only effective for low-speed parking maneuvers and are not effective in stopping vehicles accelerating or traveling at speeds that are inconsistent with a parking maneuver. This is particularly true if the vehicle has a high vertical clearance and larger wheel diameters such as a van or a sport utility vehicle. The lack of a vertical curb at the sidewalk made hopping the wheel stop and direct access to the sidewalk easier to accomplish by the Roulhac vehicle.

Expert Report, 8/30/2012, at 3.

Although D'Angelo posits that the standard practice[8] is to prove a four to six inch curb for a sidewalk, he does not provide the source of this "standard". He then claims a five inch wheel stop is insufficient to prevent a vehicle from jumping the curb. Therefore, D'Angelo opines that a four inch curb meets standard practice but a five inch wheel stop is insufficient. The report provided no explanation of how a lower curb height would meet engineering standards while a higher wheel stop would not.

Further, the report makes no mention of any standards regarding wheel stops. Therefore, the report cannot show that the wheel stops were improperly located or were of insufficient height. The report notes that larger wheeled vehicles with higher ground clearance, such as vans or SUVs, makes hopping the wheel stop easier. However, the report does not indicate the ground clearance of or the size of tires associated with the Chrysler

---

[8] Technically, standard practice need not equate to relevant engineering standards. Standard practice simply relates how most people put in a sidewalk. Standard practice does not mean that other approaches are inherently unsound or are below the standards of engineering.

Caravan driven by Roulhac. Having provided no evidence of ground clearance or tire size, a jury would be required to guess at the relevance of this information.

Further, there is no evidence in the certified record of Roulhac's speed when the accident occurred. Therefore, any commentary regarding the efficiency of wheel stops and accelerating or speeding vehicles is irrelevant.

The report also states that the wheel stops did not prevent the bump out from being struck by vehicles. However, the accident at issue here did not occur at the bump out. Therefore, any failure to meet the applicable standards at the bump out are not relevant to this accident.

The report also addresses the use of bollards:[9]

> Bollards have been installed to protect private property on the site. A well head located on the southeastern corner of the property is shown as protected by four (4) painted, concrete post bollards. There is also evidence in the photo that two bollards have been removed.

*Id*. at 6.

The report provided no engineering standards for the use of bollards. As noted previously, without a description of the appropriate standards, there can be no showing of a deviation from those standards. Truax was required to show either that the use of bollards was the engineering

---

[9] A bollard is a post, often made of concrete or metal used as a barrier between people and/or property and cars.

standard or that the use of wheel stops alone failed to meet the applicable engineering standards. This paragraph does not address either of those possibilities.

Finally, the report concludes, in relevant part:

If this site was brought up to standards to correct the site deficiencies:

. . .

2. Sidewalks would be continuous and separated from the parking field with vertical curb at sidewalk of at least 5 inches and bollards would have been installed to protect pedestrians in the same way that they have been installed on site to protect property[.]

*Id*. at 8.

The conclusion opines that certain actions must be taken for the parking lot to be "brought up to standards." Our review of the expert's report demonstrated that no standards were ever set forth. The report never provided any indication of the engineering standards for appropriate use of wheel stops or where wheel stops were inappropriate. The report never provided any indication of the engineering standards for the use of bollards. Without this information, the expert's report cannot demonstrate that the use of wheel stops at Madd Anthony's Bar was a deviation from engineering standards, or any identified standards, and therefore represented a breach of the duty of care to Truax. As a matter of law, the expert's report has failed to indicate negligence.

Because Truax has provided no legal precedent requiring the use of bollards and the expert's report failed, as a matter of law, to demonstrate negligence on the part of either Wildwood or Vitiello for using wheel stops, the grant of summary judgment was appropriate.

Order affirmed.

Judge Jenkins joins the memorandum.

Judge Bowes files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/2014